## MILLER'S EXECUTORS *v.* SWANN.

ERROR TO THE SUPREME COURT OF THE STATE OF ALABAMA.

No. 362. Submitted October 23, 1893. — Decided November 6, 1893.

In this case the writ of error was dismissed because the judgment below rested upon a construction by the state court of a statute of the State, which was sufficiently broad to sustain the judgment.

THIS case came to this court on error from the Supreme Court of the State of Alabama. On the 3d of June, 1856, Congress made a grant of public lands to the State of Ala-

bama to aid in the construction of certain railroads. 11 Stat. 17, c. 41. This grant was renewed and extended by an act of April 10, 1869. 16 Stat. 45, c. 24. By a joint resolution of the legislature of the State of Alabama, approved January 30, 1858, Acts 1857–1858, p. 430, certain railroad companies were made the beneficiaries of this grant. The Alabama and Chattanooga Railroad Company was formed by a consolidation, under the authority of the State, of two of these companies, and became thereby one of such beneficiaries. On February 11, 1870, an act was passed, Acts 1869–1870, No. 101, pp. 89 to 92, loaning two millions of dollars of the bonds of the State to this company, and providing for the execution of a mortgage by the company on all its property, including the land grant, to secure this loan. The bonds were delivered to the company, and on March 2, 1870, the mortgage called for by the last-named act was executed. Thereafter, the railroad company defaulting in the payment of its obligations to the State, was thrown into bankruptcy, and its property, including this land grant, was, on judicial sale, after proper proceedings in the District Court of the United States, purchased by the State in satisfaction of such obligations. The title thus acquired the defendants in error hold under a conveyance from the State made by virtue of what is called the "debt settlement" act of the general assembly, Acts 1875–1876, No. 38, pp. 130, 149, and they were proceeding to enforce their right to the lands in controversy in this suit by an action of ejectment.

The title of the plaintiffs in error arose in this way: Joab Bagley claimed to have purchased the lands in controversy from the Alabama and Chattanooga Railroad Company under two contracts, of date respectively September 13, 1870, and January 24, 1871, with one Daniel J. Duffy, its agent. There was some dispute in the testimony as to whether Duffy was duly authorized to act as the agent of the company, and also whether the company ever in fact received the money paid by Bagley; but for the purposes of this suit it may be assumed that Duffy was authorized to sell, and that the company received the moneys. No conveyance, however, was made by

the company to Bagley. This suit was commenced in July, 1884, by D. B. Miller, who claimed under sundry mesne conveyances from Bagley, in the Chancery Court of Jefferson County, Alabama, against John Swann and John A. Billups, trustees, and others, the object of which was to enforce the specific performance of the two contracts of September 13, 1870, and January 24, 1871, and to enjoin the further prosecution of the action of ejectment. On the 20th of June, 1885, the chancellor entered a decree in favor of the complainant, which decree was reversed by the Supreme Court of the State. 82 Alabama, 530. An amended bill having been filed, the case was again submitted to the chancellor, who, on November 12, 1888, entered a decree dismissing the complainants' bill, which decree was affirmed by the Supreme Court on the 2d of May, 1890. 88 Alabama. Subsequently to the commencement of this suit, Miller died, and the suit was revived in the names of his executor and heirs. The two original trustees have also died, and Frank Y. Anderson and W. J. Cameron have been substituted as their successors.

*Mr. Ellis. Phelan* for plaintiffs in error.

*Mr. J. A. W. Smith* for defendants in error.

MR. JUSTICE BREWER delivered the opinion of the court.

It is contended by defendants in error that, whatever questions may be found in the case, the decision of the Supreme Court of Alabama was upon a question not of a Federal character, and one broad enough to sustain the judgment, and, therefore, that this court has no jurisdiction, and should dismiss the case. *Hale* v. *Akers*, 132 U. S. 554; *Hopkins* v. *McLure*, 133 U. S. 380; *Blount* v. *Walker*, 134 U. S. 607; *Wood Mowing & Reaping Co.* v. *Skinner*, 139 U. S. 293; *Henderson Bridge Co.* v. *Henderson City*, 141 U. S. 679; *The Delaware City &c. Navigation Co.* v. *Reybold*, 142 U. S. 636.

As the mortgage to the State was executed some months before the contracts with Bagley, the title held by the State of Alabama under the bankruptcy proceedings would *prima*

*facie* be paramount to that acquired by Bagley. *Wilson* v. *Boyce*, 92 U. S. 320. To avoid this, it was contended that, under the act of February 11, 1870, and the mortgage of March 2, 1870, the railroad company, the mortgagor, was given the right to sell these lands; and the question which was considered and determined by the Supreme Court of the State, and the vital question, was whether the act and mortgage gave such authority? The act of February, 1870, provided that "the said Alabama and Chattanooga Railroad Company shall have the privilege and right of selling said lands or any part thereof in accordance with the acts of Congress granting the same." The mortgage contained the same provision. In respect to this, the Supreme Court of the State thus expressed itself: "This reservation was incorporated in the mortgage, and its construction, as applied to the facts of the case, is the controlling question for us to decide. The power retained by the mortgagor was not an unlimited power to sell. It was a power to sell only in accordance with the terms and conditions of the act of Congress making the grant, which, we have said in a former decision, was 'a law as well as a grant.' If these terms and conditions were followed, then the lien of the mortgage was by agreement to be released. If they were not followed as to the mode or time prescribed or otherwise, then the contract of the parties is that the lien of the mortgage is to remain unaffected. Compliance with the essential requirements of the act of Congress became thus a condition precedent to the divestiture of title out of the State as mortgagee. This, we repeat, was the express contract between the parties. It is sufficiently shown in the former opinion in this case that the attempt to sell to Bagley was in direct violation of the terms of the law of Congress, and, therefore, necessarily also in violation of the agreement of the parties to the mortgage, which was based on that law. *Swann* v. *Miller*, 82 Alabama, 530. The lien of the mortgage for this reason remained undischarged. This we understand to be the natural and just construction of the mortgage agreement and of the act of the Alabama General Assembly, approved February, 1870, above cited."

Section 4 of the act of Congress of June, 1856, is as follows:

"SEC. 4. *And be it further enacted,* That the lands hereby granted to said State shall be disposed of by said State only in manner following, that is to say : That a quantity of land, not exceeding one hundred and twenty sections for each of said roads, and included within a continuous length of twenty miles of each of said roads, may be sold; and when the governor of said State shall certify to the Secretary of the Interior that any twenty continuous miles of any of said roads is completed, then another quantity of land hereby granted, not to exceed one hundred and twenty sections for each of said roads, having twenty continuous miles completed as aforesaid, and included within a continuous length of twenty miles of each of such roads, may be sold; and so, from time to time, until said roads are completed; and if any of said roads is not completed within ten years, no further sale shall be made, and the lands unsold shall revert to the United States."

These lands confessedly were not part of the first one hundred and twenty sections, which the State might sell prior to the construction of any portion of the road, and there is no pretence that at the time of these contracts of Bagley's any certificate had been made by the governor of the State to the Secretary of the Interior, as provided in the act. The Supreme Court, in its first opinion, held that, under the act of 1870 and the reservation in the mortgage, the railroad company had absolutely no power to sell until the making of that certificate; and that any attempted sale made prior thereto was a nullity, not voidable, but absolutely void. Now, whether that was a correct construction or not of the act of 1870 and the reservation of the mortgage, is a purely local question, and involves nothing of a Federal character. The question is not what rights passed to the State under the acts of Congress, but what authority the railroad company had under the statute of the State. The construction of such a statute is a matter for the state court, and its determination thereof is binding on this court. The fact that the state statute and the mortgage refer to certain acts of Congress as prescribing the rule and measure of the rights granted by the

State, does not make the determination of such rights a Federal question. A State may prescribe the procedure in the Federal courts as the rule of practice in its own tribunals; it may authorize the disposal of its own lands in accordance with the provisions for the sale of the public lands of the United States; and in such cases an examination may be necessary of the acts of Congress, the rules of the Federal courts, and the practices of the Land Department, and yet the questions for decision would not be of a Federal character. The inquiry along Federal lines is only incidental to a determination of the local question of what the State has required and prescribed. The matter decided is one of state rule and practice. The facts by which that state rule and practice are determined may be of a Federal origin.

We see nothing in the cases of *St. Louis &c. Railway Co.* v. *McGee*, 115 U. S. 469, and *Doe* v. *Larmore*, 116 U. S. 198, conflicting with these views, or throwing any light on this question. These cases involved simply a consideration of the effect to be given to the later act of Congress, in respect to the rights of the State in the lands, and held that the later act was not to be considered as a new and independent grant, but simply as an extension of time.

Our conclusion, therefore, is that as the construction of the statute of 1870 and following mortgage presented no question of a Federal nature — as upon that construction the Supreme Court decided the case — and as such question is sufficiently broad to sustain the judgment, the case must be

*Dismissed.*