Bruce H. MORRIS, Plaintiff,

v.

Anthony A. DANNA et al., Defendants.

No. 3–75–Civ. 420.

United States District Court,
D. Minnesota,
Third Division.

April 1, 1976.

Paul W. Onkka, Jr., Legal Asst. of Ramsey County, St. Paul, Minn., for plaintiff.

C. David Dietz, Asst. Ramsey County Atty., St. Paul, Minn., for defendants.

## MEMORANDUM ORDER

LARSON, District Judge.

Plaintiff Bruce Morris commenced this civil action for declaratory, injunctive, and monetary relief on November 24, 1975. Jurisdiction is asserted pursuant to 28 U.S.C. §§ 1331, 1343(3) and 1343(4). The defendants are a former Assistant Ramsey County Attorney (Joseph E. Cartwright), the manager of the Ramsey County Welfare Department [RCWD] fraud unit (Grace M. Colosimo), the Director of the RCWD, the Ramsey County Attorney, and seven individual members of the Ramsey County Welfare Board. The gist of the plaintiff's cause of action is that he has been damaged by the defendants' malicious invasion of his privacy.

On November 3, 1975, a front page article appearing in the St. Paul Dispatch named the plaintiff as a male "go-go" dancer and welfare recipient who had been "tripped up" by the RCWD fraud unit. A similar article appeared in a Minneapolis newspaper the next day. The complaint alleges that the articles contained information which could only have been obtained from confidential files concerning the receipt of public assistance; in particular, the complaint points to the confidentiality of medical reports submitted to the RCWD by certain named doctors. The complaint alleges on information and belief that all of this information was released to the press for publication by defendants Cartwright and Colosimo, who had access to the files because of their public positions and were therefore acting under color of State law. The complaint further alleges that this release of information made confidential by law was willful and malicious, with the purpose and effect of depriving plaintiff of his statutory and constitutional right to privacy. Specifically, the complaint alleges that the defendants' actions deprived the plaintiff of rights, privileges and immunities secured to him by the Fourteenth

**1302**

Amendment, by 42 U.S.C. § 602(a)(9)[1] [a provision in the Social Security Act], by Federal regulations implementing that statute,[2] by Minn.Stat. §§ 15.162(2a) and 15.-1641(c),[3] and by State and county regulations.[4]

1. That section provides:

"A State plan for aid and services to needy families with children must . . . (9) provide safeguards which restrict the use of [sic] disclosure of information concerning applicants or recipients to purposes directly connected with (A) the administration of the plan of the State approved under this part, the plan or program of the State under part B, C, or D of this subchapter or under subchapter I, X, XIV, XIX, or XX of this chapter, or the supplemental security income program established by subchapter XVI of this chapter, (B) any investigation, prosecution, or criminal or civil proceeding, conducted in connection with the administration of any such plan or program, and (C) the administration of any other Federal or federally assisted program which provides assistance, in cash or in kind, or services, directly to individuals on the basis of need; and the safeguards so provided shall prohibit disclosure, to any committee or a legislative body, of any information which identifies by name or address any such applicant or recipient. . ."

2. The plaintiff cites 45 C.F.R. §§ 205.50, et seq., particularly § 205.50(a)(2)(i), listing types of information which State plans must safeguard, and § 205(a)(2)(iii), providing that an individual must be informed of an outside request for information, and the individual's consent to such disclosure must be obtained. The regulations set forth only what the State plans must contain; they do not provide an independent set of substantive standards governing the behavior of officials within State welfare agencies.

3. M.S.A. § 15.162(2a) provides:

"'Confidential data on individuals' means data which is not public but is (a) expressly made confidential by law as to the individual subject of that data; (b) collected by a civil or criminal investigative agency as part of an active investigation undertaken for the purpose of the commencement of a legal action, provided that the burden of proof as to whether such investigation is active or in anticipation of a legal action is upon the agency; (c) data which supplies the basis for the diagnosis of the medical or psychiatric condition of an individual as determined by a licensed physician."

M.S.A. § 15.1641(c) provides:

"Private or confidential data on individuals shall not be used, collected, stored or dissem-

■ The defendants have filed a motion to dismiss the complaint for lack of jurisdiction.[5] Oral argument on that motion was heard on December 12, 1975, and the parties have submitted briefs and citations of authority with respect to the issues inated for any purposes other than those stated to an individual at the time of collection in accordance with section 15.165 or, in the case of data collected prior to August 1, 1975, for any purpose other than those originally authorized by law, unless (1) the responsible authority files a statement with the commissioner describing the purposes and necessity of the purpose with regard to the health, safety or welfare of the public and the purpose is approved by the commissioner, or (2) the purpose is subsequently authorized by the state or federal legislature, or (3) the purpose is one which the individual subject or subjects of the data have given their informed consent."

M.S.A. § 15.167 provides the penalties for violation of the confidentiality statutes, including misdemeanor penalties, and suspension without pay or dismissal of a public employee—all sanctions available only if the violation is willful.

4. The State and local regulations cited by the plaintiff include, inter alia, Minnesota DPW Rule 45, Minnesota DPW "Income Maintenance Manual" § IV–1240, Minnesota AFDC Program Manual § I–F, RCWD Adm. Manual § 1010.08, and RCWD General Assistance Manual Part II.

5. The defendants also assert several other grounds calling for dismissal of the complaint, primarily failure to state a claim for which relief may be granted. Jurisdictional issues aside, it seems clear to the Court that the nine named individual defendants other than Cartwright and Colosimo cannot properly remain in the action, since the complaint fails to state a claim against them. The complaint fails to allege that the nine defendants have committed any act violative of plaintiff's rights; at least in the absence of allegations of failure to supervise and conscious knowledge of the wrongdoing of subordinates, there can be no *respondeat superior* liability under § 1983. *See Rizzo v. Goode*, 423 U.S. 362, 370–373, 96 S.Ct. 598, 604–605, 46 L.Ed.2d 561, 569, 570, 44 U.S.L.W. 4095, 4098 (January 21, 1976); *id.* at 384–387, 96 S.Ct. at 610–611, 47 L.Ed.2d at 576, 577, 44 U.S.L.W. at 4102 (Blackmun, J., dissenting); *Navarro v. Chief of Police*, 523 F.2d 214, 215, 218 n.3 (8th Cir. 1975); *Jennings v. Davis*, 476 F.2d 1271, 1274 (8th Cir. 1973); *Bichrest v. School Dist. of Philadelphia*, 346 F.Supp. 249, 253 (E.D.Pa.1972). *Cf. Cole v. Smith*, 344 F.2d 721, 722 (8th Cir. 1965).

presented therein. The Court finds the application of each of the three jurisdictional statutes to the facts of this case to be novel and difficult. Nevertheless, for the reasons set forth herein, it is convinced that neither § 1331, § 1343(3), nor § 1343(4) confer subject matter jurisdiction to entertain the present suit. Accordingly, the defendants' motion to dismiss will be granted.

## I. § 1331: FEDERAL QUESTION JURISDICTION OVER ACTIONS ARISING UNDER THE CONSTITUTION, LAWS, OR TREATIES OF THE UNITED STATES.

The plaintiff's jurisdictional argument under § 1331 has two facets. First, he argues, the action arises under the Constitution, since the defendants' conduct is alleged to have deprived him of a constitutional right to privacy. Second, he contends, the action arises under 42 U.S.C. § 602(a)(9), a provision in the Social Security Act which requires State AFDC plans to contain provisions respecting confidentiality. This Court can accept neither contention, even though it assumes arguendo that the plaintiff's claim of $75,000 in damages is made in good faith.

### A. *The Constitutional Right to Privacy.*

It is true that under some circumstances there can be such a gross abuse of privacy as to amount to an abridgment of fundamental constitutional guarantees. *See, e. g., Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *York v. Story*, 324 F.2d 450, 454–55 (9th Cir. 1963), *cert. denied*, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964). It is also true that, if such circumstances were present here, jurisdiction would attach not only by means of § 1331, assuming the requisite jurisdictional amount, but also under § 1343(3) in conjunction with 42 U.S.C. § 1983.

At common law, however, the "right to privacy" is a multifarious creature, embracing far more than the Constitution has yet been thought to regulate. As Professor Prosser has stated, the common law now protects the right of privacy by recognizing:

" . . . not one tort, but a complex of four. To date the law of privacy comprises four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by a common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff 'to be let alone.' . . . ." W. Prosser, *The Law of Torts* § 117 at 804 (4th ed. 1971).

Prosser defines the four distinct torts as: (1) "the appropriation, for the defendant's benefit or advantage, of the plaintiff's name or likeness," *id.*; (2) "intrusion upon the plaintiff's solitude or seclusion . . . [as in] unauthorized prying," *id.*, at 807–08;

As for the immunity defense, despite the Supreme Court's fresh creation of absolute immunity for prosecutors performing a prosecutorial function, *see Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128, 44 U.S.L.W. 4250 (1976), the Court explicitly left open the question of a prosecutor's immunity for investigative activities. *Id.* at 424–429, 96 S.Ct. at 992–994, 47 L.Ed.2d at 140–143, 44 U.S.L.W. at 4256. The Eighth Circuit has also left open that question. *See Duba v. McIntyre*, 501 F.2d 590, 592 (8th Cir. 1974); *Barnes v. Dorsey*, 480 F.2d 1057, 1060 (8th Cir. 1973). However, "[i]n the Eighth Circuit prosecutors who act outside the scope of their jurisdiction still have available the defense of good faith and reasonable probable cause." *Haaf v. Grams*, 355 F.Supp. 542, 545 (D.Minn.1973). The complaint alleges that Cartwright and Colosimo acted wilfully and maliciously. Assuming that these conclusory allegations are enough to surmount the motion to dismiss, the deposition of Robert Goligoski, the newspaper reporter who broke the story, fails to implicate Cartwright or Colosimo in any of the breaches of confidence. Moreover, that deposition indicates that the allegations of maliciousness will be difficult, if not impossible, to prove. Nevertheless, the Court disposes of the complaint entirely on the jurisdictional grounds stated in the text. The immunity issues may be pursued in State court should the action be filed there.

(3) "publicity, of a highly objectionable kind, given to private information about the plaintiff, even though it is true and no action would lie for defamation," *id.*, at 809; and (4) "publicity which places the plaintiff in a false light in the public eye." *Id.*, at 812.

The constitutionalization of any of these four causes of action or their corresponding privacy rights has been an extremely cautious and deliberate process, occurring only in response to extraordinary circumstances. Both *Griswold* and *York* cited by the plaintiff, presented such circumstances. *Griswold* involved an attempt by the State to intrude into the marital privacy of the bedroom. *York* involved indecent photographs of an assault victim taken by police officers and circulated within the department as a sport; the gist of the action was that the defendants had engaged in unreasonable prying for the purpose and with the effect of humiliating the plaintiff. Both *Griswold* and *York*, therefore, were concerned primarily with Prosser's second category of privacy interests; the right to freedom from unauthorized intrusion.

The present action, however, is much more closely allied with the common law tort of defamation than with unwarranted intrusions into the physical security and privacy of the plaintiff. Without denying the truth of the adverse publicity, the complaint alleges that the:

"... plaintiff has incurred substantial harm and detriment to his character and reputation, and to his ability to obtain and hold gainful employment."

Presenting as it does an issue most closely related to Prosser's third category of privacy cases, the complaint—to paraphrase Prosser—"has almost nothing in common" with the *York* and *Griswold* cases.

■ The law in this circuit is that damages for defamation by public officials are not recoverable under § 1983:

"... because a defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States. . . ." *Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975) (per curiam).

*See also Haaf v. Grams*, 355 F.Supp. 542, 545–46 (D.Minn.1973) (allegations that the defendants had maliciously issued unwarranted and unfounded criminal complaints and caused a newspaper account to be published with the intent to humiliate and injure the plaintiffs failed to state a constitutionally based cause of action under § 1983). *Accord, Baker v. Howard*, 419 F.2d 376, 377 (9th Cir. 1969). The Court concludes that this rule provides the answer to the constitutional privacy claim made here.

■ This Court has discovered only one suggestion in the reported caselaw that publication, under color of law, of governmentally held derogatory information about a citizen may give rise to a constitutionally based cause of action for invasion of privacy. The concurring opinion of Justice Douglas in *Doe v. McMillan*, 412 U.S. 306, 328, 93 S.Ct. 2018, 2033, 36 L.Ed.2d 912, 930 (1973) (joined by Brennan and Marshall, JJ.), states that in his view, the question presented was whether the congressional publication of a report containing derogatory information about named school children "infringes upon the constitutional rights of petitioners." Justice Douglas' conclusion that the ministerial officials responsible for the publication should not be immune from liability for their acts indicated his belief that the petitioners had properly stated a claim for the deprivation of their constitutional right to privacy. The majority opinion by Justice White, however, indicates rather clearly his belief that the underlying cause of action stemmed from "local laws protecting the good name or the reputation of the ordinary citizen." *Id.* at 324, 93 S.Ct. at 2030, 36 L.Ed.2d at 927. *See* Note, *The Supreme Court, 1972 Term*, 87 Harv.L.Rev. 1, 228 and n.42 (1973). The *Doe* decision itself, therefore, does not support the finding of a constitutional cause of action in the present case. Moreover, in light of the Eighth Circuit's recent rejection of the constitutional argument in *Ellingburg v. Lu-*

*cas, supra,* this Court concludes that the concurring opinion of three Supreme Court Justices is too slender a reed to support the conclusion that the plaintiff in the case *sub judice* has stated a constitutional claim. *See also Paul v. Davis,* —— U.S. ——, 96 S.Ct. 1155, 47 L.Ed.2d 405, 44 U.S.L.W. 4337 (1976) (defamatory flyer by police authorities violated no constitutional right to privacy).

### B. *The Statutory Right to the Confidentiality of Welfare Records.*

The plaintiff contends, however, that this case is distinguishable from *Ellingburg, Haaf,* and *Baker* because the information made public here was required by law to be kept confidential. This distinction, while accurate, does not alter the result with respect to his constitutional claim; it does present, however, the question of whether the action "arises under" a law of the United States within the meaning of § 1331. A careful examination of 42 U.S.C. § 602(a)(9) and the relevant caselaw convinces this Court that the present action is not one "arising under" that statute.

Section 602(a)(9) provides only that all State AFDC plans must "provide safeguards which restrict the use [or] disclosure of information concerning applicants or recipients" to certain enumerated purposes. Paragraphs 29 to 32 of the plaintiff's complaint allege in effect that the plan adopted by the State of Minnesota has complied with § 602(a)(9). It must be obvious from the outset, therefore, that for purposes of this lawsuit the requirements of the Federal statute have been fully met. The true gist of the complaint is that, notwithstanding compliance with Federal law by the State of Minnesota, certain officials in Ramsey County have violated the provisions of *State* law, albeit State law required by the Congress for participation in AFDC programs.

The caselaw on the "arising under" problem is rather sparse. Moreover, it is sometimes confusing, since each court in its turn has tried to create a verbal formula which may be more readily applied to the pleadings than the simple words used in § 1331. *See generally,* Hart & Wechsler, *The Federal Courts and the Federal System,* 844–926 (2d ed. 1973). It has been said that a case "arises under the law that creates the cause of action," *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987, 989 (1916); *accord Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 215, 41 S.Ct. 243, 250, 65 L.Ed. 577, 591 (1921) (Holmes, J., dissenting), or that a case arises under the laws or the Constitution "whenever its correct decision depends on the construction of either." *Cohens v. Virginia,* 6 Wheat. 264, 379, 5 L.Ed. 257 (U.S. 1821) (Marshall, C. J.). In one of the Supreme Court's most recent decisions on the matter, Justice Brennan declared that "there is federal-question jurisdiction if a proposition of federal law is inherent in the plaintiff's claim." *Wheeldin v. Wheeler,* 373 U.S. 647, 660, 83 S.Ct. 1441, 1449, 10 L.Ed.2d 605, 616 (1963) (Brennan, J., dissenting). This Court is satisfied that the plaintiff's claim herein fails to arise under § 602(a)(9) under any of these verbal formulae. Section 602(a)(9) did not "create the cause of action," because that section governs only the ingredients of a State AFDC plan; the correct decision in this case will not depend upon any construction of § 602(a)(9), since the applicable statutes and regulations are State law; and no Federal question is "inherent in the plaintiff's claim," since the State laws are more than adequate to deal with the defendants' alleged conduct and the Federal statute adds nothing.

More importantly, however, the issue in this case seems to be precisely analogous to that faced by the Supreme Court in *Miller's Executors v. Swann,* 150 U.S. 132, 14 S.Ct. 52, 37 L.Ed. 1028 (1893), and this Court is convinced that that decision governs the present matter. In *Swann* Congress had granted public lands to the State of Alabama to aid in the construction of railroads. The Act of Congress conveying the land provided explicit conditions governing any further conveyance by the State, declaring

"the lands hereby granted shall be disposed of by said state only in [the] manner following . . . ." The State, in turn, conveyed the land to a railroad company, retaining a mortgage thereon, with the terms of the mortgage paralleling all the conditions required by the Act of Congress. Upon the bankruptcy of the railroad, the State and a vendee from the railroad both claimed a certain parcel of land, and the sole question presented was whether the railroad had sufficiently complied with the conditions of the Act of Congress (as incorporated in the mortgage) to give it the power to convey to the third party claimant. The Alabama Supreme Court determined that such conditions had not in fact been met, and that the State was entitled to the land. On appeal to the United States Supreme Court, the Court concluded that it was without jurisdiction to hear the matter, for want of a Federal question:

"  .   .   Now, whether that [the Alabama Supreme Court decision] was a correct construction or not of the [congressional] Act of 1870 and the reservation of the mortgage, is a purely local question, and involves nothing of a federal character. The question is not what rights passed to the state under the acts of congress, but what authority the railroad company had under the statute of the state. The construction of such a statute is a matter for the state court, and its determination thereof is binding on this court. The fact that the state statute and the mortgage refer to certain acts of congress as prescribing the rule and measure of the rights granted by the state, does not make the determination of such rights a federal question.  .   .   .
The inquiry along federal lines is only incidental to a determination of the local question of what the State has required and prescribed.  .   .   ." *Id.* at 136–37, 14 S.Ct. at 54, 37 L.Ed. at 1029.

■ The facts in the present case are similar. The Social Security Act provides in effect that Federal monies allocated

thereunder shall be expended by the State of Minnesota only in a manner consistent with all provisions of the Act, including § 602(a)(9). To fulfill that statutory condition, Minnesota adopted its own laws protecting confidentiality. *See* notes 3 and 4 *supra.* Even though creation of this State law was mandated by Congress (a fact also true in *Swann* ), violation of the State law is a matter of State concern and raises no Federal question. To paraphrase the Court in *Swann,* the question is not what rights and duties passed to the State under the Federal act—since the plaintiff alleges that the State has already complied with such duties—but what duties the defendants had under the laws of the State. "The inquiry along federal lines is only incidental to a determination of the local question of *what the state has required and prescribed.*" *Id.* (emphasis supplied).

Despite the age of the *Swann* decision, nothing in the caselaw since that time indicates to this Court that *Swann* was wrongly decided. To the contrary, later caselaw is consistent with *Swann.* In *Moore v. Chesapeake & Ohio Ry.,* 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755 (1934), State law provided that a defendant railroad which had failed to comply with the provisions of the Federal Safety Appliance Act would not be permitted to raise the defense of contributory negligence. Thus, the State had voluntarily incorporated by reference certain provisions of Federal law. The Court concluded that no Federal question was presented in *Moore,* where an employee injured in intrastate commerce sued the railroad for negligence. Similarly, Justice Holmes' dissent in *Smith v. Kansas City Title Co.,* 255 U.S. 180, 215, 41 S.Ct. 243, 250, 65 L.Ed. 577, 591 (1921), declared:
"  .   .   The mere adoption by a State law of a United States law as a criterion or test, when the law of the United States has no force *proprio vigore,* does not cause a case under the State law to be also a case under the law of the United States, and so it has been decided by this Court again and again.  .   .   ."

*See also Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 507, 20 S.Ct. 726, 44 L.Ed. 864, 865 (1900); *Union National Bank v. Louisville R.R.*, 163 U.S. 325, 331, 16 S.Ct. 1039, 1042, 41 L.Ed. 177, 178 (1896).

■ Moreover, the result called for by this caselaw squares with the scheme of the Social Security Act. While Congress did wish to assure that welfare files were in fact kept confidential by the non-Federal[6] employees who deal with them, it sought to achieve that goal by making the States responsible not only for adopting such statutes and regulations, but also for enforcing such statutes and regulations in the State courts.[7] Were the right of confidentiality enforced in Federal court by direct reference to Federal law, no useful purpose would have been served by delegating the responsibility for promulgating statutes and regulations to the States—a delegation which § 602(a)(9) unequivocally makes. To require creation of new law in fifty jurisdictions is inexplicable if the single Federal enactment would suffice. The carefully structured—if uneasy—federalism of § 602(a) and similar sections is central to administration of the welfare laws and must be circumspectly honored by the Federal courts. As one commentator has stated in analyzing the welfare statutes, "Federal court jurisdiction can be invoked only when conflicts between state and federal laws exist." Herzer, *Federal Jurisdiction Over Statutorily-Based Welfare Claims*, 6 Harv.Civ.Rts.—Civ.Lib.L.Rev. 1, 11 (1970). The allegations of the complaint demonstrate that there is no such conflict here, and the case does not "arise under" a law of the United States. There is no jurisdiction under 28 U.S.C. § 1331.

II. § 1343(3): JURISDICTION TO REDRESS DEPRIVATION OF ANY RIGHT, PRIVILEGE OR IMMUNITY SECURED BY THE CONSTITUTION OR BY ANY ACT OF CONGRESS PROVIDING FOR EQUAL RIGHTS OF CITIZENS.

Section 1343(3) provides for original jurisdiction in the district courts of any civil action authorized by law to be commenced: ". . . [t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

As was true with respect to § 1331, the plaintiff argues that jurisdiction is met in this case under either the constitutional or the statutory fork of § 1343(3); that is, he urges that the privacy right invaded by the defendants' actions is one "secured" both by the Fourteenth Amendment and by § 602(a)(9).

■ The first theory, however, meets with the same infirmity encountered with respect to § 1331: the plaintiff has failed to state a constitutional claim. For the reasons set forth in Part I–A of this Memorandum, the Court is satisfied that the plaintiff's right not to have his welfare files disclosed to the press is not a right secured by the Constitution.

■ The second or statutory theory of jurisdiction under § 1343(3) fares no better. For jurisdiction to attach under that provision, the right at issue must be one secured by an Act of Congress "providing for equal

6. The conduct of Federal employees in using and disclosing confidential information on citizens is governing by the Privacy Act of 1974, 5 U.S.C. § 552a. That statute, which applies only to agencies of the United States and employees thereof, provides for a private cause of action and grants jurisdiction to the Federal district courts with no minimum jurisdictional amount requirement. 5 U.S.C. § 552a(g)(5).

7. Indeed, 45 C.F.R. § 205.50(a)(1) provides that the confidentiality requirements of 42 U.S.C. § 602(a)(9) must be included in a State plan "pursuant to State statute which imposes legal sanctions." This is further proof that enforcement of the confidentiality provisions is to be a State matter.

rights." The Supreme Court has carefully refrained from ruling on the issue of whether a statutorily based welfare claim may be reviewed pursuant to § 1343(3) absent a noninsubstantial constitutional claim to which it may be appended. *See Rosado v. Wyman*, 397 U.S. 397, 405 n.7, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442, 451 (1970); *King v. Smith*, 392 U.S. 309, 312 n.3, 88 S.Ct. 2128, 2130, 20 L.Ed.2d 1118, 1122 (1968). But the narrow wording of § 1343(3) in juxtaposition with 42 U.S.C. § 1983 presents a well known problem, and the courts cannot creatively ignore the words of limitation. At least two courts have squarely held that the Social Security Act is not an act "providing for equal rights of citizens." *Almenares v. Wyman*, 453 F.2d 1075, 1082 n.9 (2d Cir. 1971), *cert. denied*, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); *Aguayo v. Richardson*, 352 F.Supp. 462, 469 (S.D.N.Y.1972), *modified on other grounds*, 473 F.2d 1090 (2d Cir. 1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974). *See also* Hart & Wechsler, *supra*, at 961; Emerson, Haber & Dorsen, *Political and Civil Rights in the United States* 23–24 (1973 Supp.); Herzer, *supra*, at 1–16. In this Court's view that conclusion is so obvious that the issue cannot even be said to be debatable. Nor can § 602(a)(9) standing alone be said to be an act "providing for equal rights." *Cf. McGuire v. Amrein*, 101 F.Supp. 414 (D.Md.1951) (wiretap provisions in Federal Communications Act of 1934 do not constitute an act "providing for equal rights"). There is no jurisdiction under 28 U.S.C. § 1343(3).

## III. § 1343(4): JURISDICTION TO RECOVER DAMAGES OR SECURE RELIEF UNDER ANY ACT OF CONGRESS PROVIDING FOR THE PROTECTION OF CIVIL RIGHTS.

Section 1343(4) provides original jurisdiction in the district courts in cases:

"... [t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

The plaintiff's brief concedes the vulnerability of his jurisdictional argument under § 1343(4):

"... While [§ 602(a)(9)] itself is ... not normally viewed as conferring civil rights upon those subject to it, a more careful study indicates that at least in terms of § 1343(4) jurisdiction, the Act has important civil rights purposes."

▉ Insofar as this Court has been able to ascertain, the reported caselaw is unanimous in its conclusion that the Social Security Act is not an "Act of Congress providing for the protection of civil rights." *See, e. g., Almenares v. Wyman, supra*, at 1082 n.9; *McCall v. Shapiro*, 416 F.2d 246, 249 (2d Cir. 1969); *Rosado v. Wyman*, 414 F.2d 170, 178 (2d Cir. 1969), *rev'd on other grounds*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Duffany v. Van Lare*, 373 F.Supp. 1060, 1064 (N.D.N.Y.1973). This Court agrees with that conclusion. *See also* Herzer, *supra*, at 16–18.

▉ A more difficult question is posed when considering whether § 602(a)(9), standing alone, might be an act "providing for the protection of civil rights." For purposes of this lawsuit, this Court is willing to assume arguendo that § 602(a)(9) may properly be characterized as such a law.[8] Nevertheless, § 1343(4) provides for jurisdiction only when the plaintiff seeks to recover damages or to obtain other relief *"under"* such an act. For the reasons set forth in part I–B of this Memorandum, the Court concludes that the plaintiff does not seek relief "under" § 602(a)(9), and that § 1343(4) jurisdiction is not met.[9]

---

**8.** This assumption ignores two difficult issues which the Court does not purport to resolve: (1) is the "providing for" clause of § 1343(4) met where an act only incidentally protects civil rights and such protection was not the primary purpose or even an intended purpose of the act; and (2) what is meant by "civil rights"?

**9.** Two Federal courts have indicated their belief that, when all else fails, § 1983 may itself be said to be an act "providing for the protection"

No other ground of jurisdiction having been presented, and this Court having concluded that § 1331, § 1343(3), and § 1343(4) have not been met, it follows that this Court cannot entertain the present complaint.

IT IS ORDERED:

That the motion of the defendants to dismiss the complaint for lack of jurisdiction is granted, and that the complaint is hereby dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

of civil rights." *See Gomez v. Florida State Employment Service*, 417 F.2d 569, 580 n.39 (5th Cir. 1969) (action seeking enforcement of Federal wage and housing provisions); *Worrell v. Sterrett*, 2 Pov.L.Rep. ¶ 10,575 (N.D.Ind. October 15, 1969) (action seeking enforcement of Social Security Act provision that certain AFDC processes be completed within thirty days). This Court cannot accept that construction of the jurisdictional statute. Were § 1983 itself interpreted to be a law protecting civil rights, "§ 1343(4) jurisdiction would lie for all deprivations of statutory rights, including those totally unrelated to civil rights." Herzer, *supra* at 18. This would not square with the House Report's characterization of § 1343(4)—added by the Civil Rights Act of 1957—as a "technical amendment." *See* H.R.Rep.No.291, 85th Cong., 1st Sess. 11 (1957). *See also* Hart & Wechsler, supra, at 962.