MOBIL OIL CORPORATION, a New
York Corporation,
Plaintiff-Appellant,

v.

COASTAL PETROLEUM COMPANY, a
Florida Corporation,
Defendant-Appellee.

MOBIL OIL CORPORATION, a New
York Corporation,
Plaintiff-Appellant,

v.

COASTAL PETROLEUM COMPANY, a
Florida Corporation, and The State of
Florida Department of Natural Re-
sources and The Board of Trustees of
the Internal Improvement Trust Fund of
the State of Florida, Defendants-Appel-
lees.

Nos. 81–5533, 81–5812.

United States Court of Appeals,
Eleventh Circuit.

March 4, 1982.

King & Spalding, Charles H. Kirbo, Michael C. Russ, Atlanta, Ga., Holland & Knight, Julian Clarkson, Hume F. Coleman, Tallahassee, Fla., for Mobil Oil Corp.

James R. Hubbard, Beckham, McAliley & Proenza, Miami, Fla., Robert J. Beckham, Jacksonville, Fla., Joseph C. Jacobs, Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, Fla., for Bd. of Trustees of Intern. Imp. Trust Fund for State of Fla.

Robert J. Angerer, Joseph C. Jacobs, Tallahassee, Fla., C. Dean Reasoner, Washington, D. C., for Coastal Petroleum Co.

Before MORGAN, TJOFLAT and JOHNSON, Circuit Judges.

TJOFLAT, Circuit Judge:

## I.

These consolidated appeals arise out of a lawsuit whose complex procedural history we need only summarize. On September 24, 1976, Mobil Oil Corporation (Mobil) filed a complaint in the Circuit Court for Leon County, Florida, seeking a declaration of its rights under an oil exploration agreement with Coastal Petroleum Company (Coastal). Coastal responded with five counterclaims, the second of which alleged Mobil's conversion of phosphate from lands owned by the State of Florida and leased by Coastal. Coastal joined as a necessary party to the second counterclaim the Trustees of the Internal Improvement Trust Fund of the State of Florida (the Trustees), who hold title to state lands.

On November 20, 1979, Mobil filed a counterclaim (the reply counterclaim) against Coastal and the Trustees, seeking a declaration of the parties' rights based on an 1862 deed from the Trustees to Mobil's predecessor in interest encompassing eighty acres of unmined land coursed by the Peace River. On December 20, 1979, the Trustees and Coastal (appellees) removed the case to the district court, asserting that Mobil's reply counterclaim raised a substantial federal question by challenging the Trustees' sovereignty claim to the subject land. Mobil moved to remand the case to the state court, but the district court denied the motion.

In December of 1980, Coastal's fourth counterclaim was tried in the district court, resulting in a final judgment on a jury verdict in favor of Coastal. In No. 81–5533, Mobil appeals that judgment, contending that the district court lacked subject matter jurisdiction of the reply counterclaim, and therefore of the case, and that the district court committed error in the conduct of the trial.[1]

On July 29, 1981, Coastal moved the district court for an injunction to prohibit Mobil from proceeding further in a related state court quiet title action. The district

---

1. In addition to its jurisdictional contention, Mobil argues that the record contains no evidence to support the jury's assessment of compensatory damages and that the district court erred in ruling that the Mobil-Coastal oil exploration agreement required Mobil to furnish a geochemical report to Coastal; in instructing the jury that it could award more than nominal damages under Count One of Coastal's fourth counterclaim; in submitting a misrepresentation claim to the jury; and in submitting Coastal's request for punitive damages to the jury.

court entered an order enjoining the parties from filing or further litigating in any state or federal court any lawsuit which would require the determination of any legal or factual issue forming the basis of this lawsuit or necessarily relating thereto. In No. 81–5812, Mobil appeals the injunction, contending that it is prohibited by the Anti-Injunction Act, 28 U.S.C. § 2283 (1976), and, again, challenging the subject matter jurisdiction of the district court. Because we conclude that the district court lacks jurisdiction of this case, we reach none of the other issues raised in these consolidated appeals.

## II.

The federal removal statute, 28 U.S.C. § 1441 (1976), permits defendants to remove state court civil actions of which the federal courts have original jurisdiction.[2] The jurisdictional question presented in this case is whether Mobil's reply counterclaim arises under federal law within the meaning of 28 U.S.C.A. § 1331(a) (West Supp. 1980)[3] so as to be removable.[4] The reply counterclaim alleges in relevant part:

### ALLEGATIONS COMMON TO ALL COUNTS

1. This is an action for declaratory judgment pursuant to Chapter 86, Florida Statutes. The subject matter of the controversy exceeds $2,500 in value.

2. MOBIL owns, and is in possession of the SE ¼ of NW ¼ and SW ¼ of NE ¼ of Section 23, Township 31 South, Range 25 East, Polk County, Florida. The Peace River courses a part of these lands and parts lie within the swamps that adjoin the river.

3. MOBIL's ownership is based on a continuous chain of title which began with a deed from the State of Florida to Henry S. Seward dated November 20, 1862. The deed ... does not mention any rivers, waterbodies or watercourses nor does it reserve any interest in STATE.

4. STATE and COASTAL have asserted in this suit that MOBIL has converted phosphate by having mined certain lands allegedly owned by STATE and that are subject to a mineral lease between STATE and COASTAL .... The lands described in paragraph 2, above, have not been mined and, accordingly, are not among the lands from which phosphate has allegedly been converted.

5. The conversion claims of STATE and COASTAL are bottomed on the contention that the lands from which the phosphate was allegedly taken underlie waterbodies or watercourses which were navigable in fact when Florida became a State on March 3, 1845, and, as such, are sovereignty lands.

\* \* \* \* \* \*

---

2. 28 U.S.C. § 1441 (1976) provides in pertinent part:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

3. 28 U.S.C.A. § 1331(a) (West Supp. 1980) provides: The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

4. No other claim in the case is asserted to arise under federal law. The Trustees correctly concede that the action could not be removed on diversity grounds because, assuming *arguendo* that the Trustees are a citizen for purposes of diversity, removal on diversity grounds is permitted only if no defendant is a resident of the state where the action was brought. See 28 U.S.C. § 1441(b), *supra*, note 2. Coastal's argument that Mobil waived the right to challenge removal on diversity grounds is meritless.

## COUNT I

### (Lands are not sovereignty in character)

10. The Peace River was not "meandered" (which would have indicated navigability) nor otherwise designated as navigable, by the original government surveyors or those who prepared the original township plats at any point north of the dividing line between Townships 38 and 39.

11. The Peace River was not navigable in fact on March 3, 1845, at any point north of the dividing line between Townships 38 and 39. Township 31 is north of that line.

12. Inasmuch as there were no navigable waterbodies on the lands described in paragraph 2, above, on March 3, 1845, no part of the lands are sovereignty lands.

The eight remaining counts of the reply counterclaim involve, all parties agree, only state law questions.

 For a case to arise under federal law, a right or immunity created by that law must be an essential element of the plaintiff's claim; the federal right or immunity that forms the basis of the claim must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another. *Maxwell v. First Nat'l Bank of Monroeville,* 638 F.2d 32, 35 (5th Cir. 1981)[5]; *In Re Carter,* 618 F.2d 1093, 1100 (5th Cir. 1980), *citing Gully v. First Nat'l Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). In order to determine whether the claim arises under the Constitution or laws of the United States, we look to the complaint unaided by anticipated defenses and with due regard to the real nature of the claim. *Maxwell,* 638 F.2d at 35; *Gully,*

299 U.S. at 113, 57 S.Ct. at 98. "A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends. This is especially so of a suit involving rights to land acquired under a law of the United States." *Heirs of Burat v. Bd. of Levee Comm'rs,* 496 F.2d 1336, 1342 (5th Cir.), *cert. denied,* 419 U.S. 1049, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974), *quoting Shulthis v. McDougal,* 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912).

 Acknowledging these precepts, the parties differently characterize Mobil's pleading. Pointing to the reply counterclaim's challenge to Florida's acquisition of title to the disputed lands as sovereignty lands, the Trustees and Coastal argue that Mobil's claim turns on a federal question, namely, the navigability of the Peace River on March 3, 1845, the date Florida was admitted to the Union. If the Peace River was navigable at that date, title to the lands beneath the river passed from the United States to the State of Florida under the equal footing doctrine[6] and were received by Florida as sovereign lands. The passing of title under the equal footing doctrine, the argument continues, is a federally created right which is governed by federal law; thus, the navigability of the Peace River on March 3, 1845, is a substantial federal question supporting federal subject matter jurisdiction.

Mobil maintains that its reply counterclaim involves a mere title dispute between Florida land claimants, each of whom derives its claim from the State, so that Flori-

---

**5.** The Eleventh Circuit has adopted as binding precedent decisions rendered by the former Court of Appeals for the Fifth Circuit before the close of business on September 30, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (en banc).

**6.** Under the equal footing doctrine, "the new States ... have the same rights, sovereignty and jurisdiction ... as the original States pos-

sess within their respective borders." *Mumford v. Wardwell,* 6 Wall. 423, 436, 18 L.Ed. 756 (1867). *Pollard's Lessee v. Hagan,* 3 How. 212, 11 L.Ed. 565 (1845), held that under the equal footing doctrine, new states, upon their admission to the Union, acquire title to the lands underlying navigable waters within their boundaries.

da law, and not federal law, governs the controversy. While federal law may determine the navigability of waters for the limited purpose of ascertaining whether title to a riverbed passed from the United States to Florida when Florida became a state, once title has passed, as the parties agree has occurred here, Florida law governs any subsequent claim to the property.

In its denial of Mobil's motion to remand, the district court embraced the characterization advanced by the Trustees and Coastal:

> The navigability of the waterbodies in issue in 1845 and the location of the ordinary high water line of the waterbodies in 1845, if they were navigable, are issues to be determined by federal law. Additionally, in this case the determination of these federal questions is a condition precedent to a declaration of Mobil's rights of ownership with respect to the lands which it claims through various deeds and patents. Mobil correctly states that a determination of whether the property in question was transferred into private ownership is a state question, which must be determined in accordance with State law, necessarily involving the State test of navigability. However, Mobil ignores the essential and initial necessity for a determination of the federal questions raised by its declaratory action before the State questions may even be reached....

> Mobil's "counterclaim" can thus be seen to have brought this action within the original jurisdiction of this Court as an action "arising under" federal law. Mobil's declaratory claim seeks fundamentally to resolve whether the sovereignty claim of the Trustees and Coastal, upon which the conversion claim is based, is valid. A determination of the validity of the sovereignty claim depends on the navigability of the rivers in issue at statehood, a federal question.

(citations omitted).

■ Clearly enough, Mobil does allege that the Peace River was not navigable in fact on March 3, 1845, and that the disputed property is therefore not sovereignty land. The appellees cite *United States v. Oregon*, 295 U.S. 1, 55 S.Ct. 610, 79 L.Ed. 1267 (1935), and *United States v. Utah*, 283 U.S. 64, 51 S.Ct. 438, 75 L.Ed. 844 (1931), for the proposition that the question whether a river is navigable so that the submerged lands pass to a state at statehood is a federal question supporting federal jurisdiction. Those cases were property contests between the United States and a state. We do not question that when the United States and a state dispute whether submerged land has passed to a state under the equal footing doctrine or remains federal land, navigability is a federal question. In order to ascertain whether Mobil's claim, with due regard to its real nature, presents a substantial controversy respecting the validity, construction, or effect of federal law, however, we must identify the role which the asserted federal question plays in the present controversy.

The disputed property was deeded by the State of Florida to Mobil's predecessor in interest in 1862, and the state held title to the property at the time of the conveyance. Title had passed to the state by one of two means: either Florida acquired the lands under the equal footing doctrine at statehood on March 3, 1845, because the Peace River was then navigable, or Florida acquired the lands in 1850 under the Swamp and Overflow Lands Grant Act, 9 Stat. 520, now codified at 43 U.S.C. § 982 (1976). If the state acquired the lands under the equal footing doctrine in 1845, they were received as sovereignty lands; otherwise, they were not. Florida law treats sovereignty lands differently than other lands: sovereignty lands, unlike other lands, are held by the state in public trust and are subject to certain restrictions on alienation.

The position of the Trustees and Coastal is that the Peace River was navigable on March 3, 1845, so that the state received the disputed lands as sovereignty lands and the 1862 deed did not, under Florida law, convey the property to Mobil's predecessor in interest. Mobil's position is that the Peace River was not navigable on March 3, 1845,

so that the state received the disputed lands in 1850 as nonsovereignty lands, and the 1862 deed, under Florida law, conveyed the property to Mobil's predecessor in interest.

■ The sole significance in this case of the navigability of the Peace River in 1845 is that the State of Florida elects to denominate lands acquired from the United States under the equal footing doctrine as sovereign lands and to restrict the alienability of those lands. The federal question relied on by the appellees is a mere criterion which Florida chooses to adopt as the determinant of a rule of state real property law. In 1862, before the state deeded the disputed property to Mobil's predecessor in interest, the state was at absolute liberty, so far as federal law was concerned, to treat the property as it wished. If the property was subject to restrictions on alienation, those restrictions were imposed by state law. That the state chose to look to the equal footing origin of the lands as fixing forever their sovereign character is no predicate for federal jurisdiction.

Properly viewed, then, the question which is asserted to support the jurisdiction of the district court is incidental to Mobil's claim and not at its essence; nor does the fact that a determination of navigability may resolve the controversy alter our conclusion.

> The whole foundation of the duty is [state] law, which at its sole will incorporated the other law as it might incorporate a document. The other law or document depends for its relevance and effect not on its own force but upon the law that took it up, so ... the cause of action arises wholly from the law of the State.... The mere adoption by a State law of a United States law as a criterion or test, when the law of the United States has no force proprio vigore, does not cause a case under the State law to be also a case under the law of the United States....

*Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 214–15, 41 S.Ct. 243, 250, 65 L.Ed. 577 (1921) (Holmes, J., dissenting).

The decision of the Supreme Court in *Oregon ex rel. State Land Bd. v. Corvallis*

*Sand & Gravel Co.*, 429 U.S. 363, 97 S.Ct. 582, 50 L.Ed.2d 550 (1977), strongly supports our holding. There, the State of Oregon had brought a state court ejectment action against an Oregon corporation over the ownership of two portions of land underlying the navigable Willamette River. One portion had been within the riverbed since Oregon's admission to the Union, while the other had only later become part of the riverbed because of changes in the river's course. The Oregon courts took the view that federal common law controlled the dispute because the extent of a state's sovereign right under the equal footing doctrine was a federal question. On this basis, they awarded the first portion to the state and the second to the corporation.

On certiorari, the Supreme Court vacated the judgment and remanded, holding that ownership of the disputed lands should be decided solely as a matter of Oregon law and not federal common law, because application of federal common law was required neither by the equal footing doctrine nor by any other principle of federal law. So holding, the Court overruled *Bonelli Cattle Co. v. Arizona*, 414 U.S. 313, 94 S.Ct. 517, 38 L.Ed.2d 526 (1973), and repudiated *Bonelli's* holding that the nature of the title conferred by the equal footing doctrine is governed by federal common law. 429 U.S. at 369–70, 97 S.Ct. at 586–587. "Although federal law may fix the initial boundary line between fast lands and the riverbeds at the time of a State's admission to the Union, the State's title to the riverbed vests absolutely as of the time of its admission and is not subject to later defeasance by operation of any doctrine of federal common law." *Id.* at 370–371, 97 S.Ct. at 587. Most significantly here, the Court reaffirmed that:

> [W]henever the question in any Court, state or federal, is, *whether* a title to land which had once been the property of the United States has passed, that question must be resolved by the laws of the United States; but ... *whenever*, according to those laws, *the title shall have passed*, then that property, like all other property

in the state, is *subject to state legislation*; so far as that legislation is consistent with the admission that the title passed and vested according to the laws of the United States.

*Id.* at 377, 97 S.Ct. at 590, quoting *Wilcox v. Jackson*, 13 Pet. 498, 517, 10 L.Ed. 264 (1839) (emphasis in original).

The Trustees and Coastal would limit *Corvallis* to title disputes in which the parties agree that the lands previously acquired by the state were acquired as sovereignty lands. The Supreme Court in *Corvallis* foreclosed this interpretation of its decision. The Court held that state law governs the disposition of property held by a state regardless of whether or not the state acquired the property as sovereignty land under the equal footing doctrine:

> Thus, if the lands at issue did pass under the equal-footing doctrine, state title is not subject to defeasance and state law governs subsequent dispositions.

> \* \* \* \* \* \*

A similar result obtains in the case of riparian lands which did not pass under the equal footing doctrine. This Court has consistently held that state law governs issues relating to this property, like other real property, unless some other principle of federal law requires a different result.

429 U.S. at 378, 97 S.Ct. at 591.

The appellees insist that the pivotal issue in this case is indeed, as *Corvallis* requires, "*whether* a title to land which had once been the property of the United States has passed," because the principal controversy is *whether* the Trustees acquired title to the disputed lands in 1845 under the equal footing doctrine, or in 1850 as swamp and overflow lands. But there is no question in this case *whether*, in the sense obviously intended by *Corvallis*, title to the disputed land has passed; the parties agree that it has. The issue is whether, under Florida law, the 1862 deed to Mobil's predecessor conveyed the disputed property. That Florida chooses to answer this question by inquiring by what means it initially acquired title to the property does not alter the fact that this is a case in which, title having passed to the state, state law controls.

A case bearing more directly on the collateral relationship between the navigability of the Peace River in 1845 and the present controversy is *Miller's Executors v. Swann*, 150 U.S. 132, 14 S.Ct. 52, 37 L.Ed. 1028 (1893). In *Swann*, Congress had granted public lands to the State of Alabama to aid in the construction of railroads. The Act granting the land provided explicit conditions governing any further conveyance by the State. The State conveyed the land to a railroad company, retaining a mortgage whose terms paralleled the conditions imposed by Congress. Upon the bankruptcy of the railroad, the State and a vendee of the railroad both claimed a certain parcel of land, disputing whether the railroad had sufficiently complied with the conditions of the Act of Congress (as incorporated in the mortgage) to give it the power to convey to the third party claimant. The Alabama Supreme Court determined that the conditions had not been met, and that the State was entitled to the land. On appeal to the United States Supreme Court, the Court concluded that it was without jurisdiction to hear the matter for want of a federal question:

> Now, whether [the Supreme Court of Alabama's] was a correct construction or not of the act [conveying the land to the railroad] and the reservation of the mortgage, is a purely local question, and involves nothing of a federal character. The question is not what rights passed to the state under the acts of congress, but what authority the railroad company had under the statute of the state. The construction of such a statute is a matter for the state court, and its determination thereof is binding on this court. The fact that the state statute and the mortgage refer to certain acts of congress as prescribing the rule and measure of the rights granted by the state does not make the determination of such rights a federal question. *A state may prescribe the procedure in the federal courts as the rule of*

*practice in its own tribunals: it may authorize the disposal of its own lands in accordance with the provisions for the sale of the public lands of the United States; and in such cases an examination may be necessary of the acts of congress, the rules of the federal courts, and the practices of the land department, and yet the questions for decision would not be of a federal character. The inquiry along federal lines is only incidental to a determination of the local question of what the state has required and prescribed. The matter decided is one of state rule and practice. The facts by which that state rule and practice are determined may be of a federal origin.*

*Id.* at 136–37, 14 S.Ct. at 54 (emphasis added).

We find nothing in the case law since *Swann* that causes us to question its currency, *see e.g., Moore v. Chesapeake & Ohio Ry. Co.,* 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755 (1934); *Morris v. Danna,* 411 F.Supp. 1300 (D.Minn.1976), *aff'd,* 547 F.2d 436 (8th Cir. 1977), or its obvious applicability to this case.

Our conclusion that the district court has no jurisdiction of this case comports with the fact that there is no federal interest whatever in the resolution of this controversy. Federal law is appropriately indifferent to Florida's invocation or application of a federal test of navigability as a precondition to determining a question of state law. The appellees direct us to *United States v. Holt State Bank,* 270 U.S. 49, 55–56, 46 S.Ct. 197, 199, 70 L.Ed. 465 (1926), in which the Court held that "Navigability, when asserted as the basis of a right arising under the Constitution of the United States, is necessarily a question of federal law to be determined according to the general rule recognized and applied in the federal courts.... To treat the question as turning on the varying local rules would give the Constitution a diversified operation where uniformity was intended." Here, not

as in *Holt State Bank,* neither party asserts navigability as the basis of a right arising under the Constitution or laws of the United States. Moreover, no uniform interpretation of federal law is intended or needed when the federal law exerts no force proprio vigore but is merely set up by the state as a criterion by which to decide a state law question.

### III.

We hold, then, that the district court lacks jurisdiction of this case. The judgment appealed in No. 81–5533 is vacated, and on receipt of the mandate the district court shall remand the case to the state court. The injunction appealed in No. 81–5812 is dissolved.*

VACATED, with instructions.

---

* We note that on October 15, 1981, the district court extended the injunction in this case to apply to American Cyanamid Company which is involved in a similar lawsuit against Coastal.

American Cyanamid Company's appeal of that injunction is now pending before this court in Case No. 81–6061.