## Fritts v. Fregly

*Joseph A. Campagna, Jr.*, for plaintiffs.
*Robert B. Hoffman,* for defendants.

RANCK, *J.*, October 1, 1979—We have before us defendants' preliminary objections to plaintiffs' amended complaint. In their complaint, plaintiffs allege that they were determined to be financially eligible to receive cash and medical assistance by the Northumberland County Board of Assistance (hereinafter the board). As a result of plaintiffs' eligibility, defendants Henry Fregly, Thomas Hodrick, Pauline Yeager, and Does I-X, all employes of the board, had access to the board's records concerning plaintiffs. The complaint states that these defendants, either jointly or separately, disclosed or caused to be disclosed to the News Publishing and Printing Company, the Daily Item Publishing Company, and the Standard Printing Company, Inc., information from these records. Each of the defendant newspapers subsequently published a

single story which contained information concerning plaintiffs gleaned from the board's records. Plaintiffs are seeking compensatory and punitive damages from defendants for intentional infliction of emotional distress and invasion of their right to privacy under the Ninth Amendment to the Constitution of the United States.

All defendants have filed various preliminary objections to plaintiffs' amended complaint. We will first examine those filed by defendants Fregly, Hodrick, and Yeager.

## PRELIMINARY OBJECTIONS OF DEFENDANTS FREGLY, HODRICK, AND YEAGER

### I. Petition Raising the Question of Jurisdiction

Before we can rule on any of the other objections of defendants Fregly, Hodrick, and Yeager we must first determine if we have jurisdiction over them. As stated above, these defendants are all employes of the Northumberland County Board of Assistance. Henry Fregly is the executive director of the board, Pauline Yeager is a caseworker supervisor, and Thomas Hodrick is a caseworker. They claim that since they are "Commonwealth Officials" this court has no jurisdiction and the action should be transferred to Commonwealth Court.

Section 401(a) of the Appellate Court Jurisdiction Act of 1970,[1] 17 P.S. §211.401(a), provides that:

---

1. This action was filed prior to the repeal of the Appellate Court Jurisdiction Act by the Judiciary Act Repealer Act of April 28, 1978, P.L. 202, sec. 2(a) [1443], effective June 27, 1978. However under section 761(a) of the Judicial Code, 42 Pa.C.S.A. §761(a), the present statute dealing with the jurisdiction of the Commonwealth Court, our analysis would be the same.

"The Commonwealth Court shall have original jurisdiction of: (1) All civil actions or proceedings against the Commonwealth or any officer thereof, acting in his official capacity. . . ." Thus the determinative issue is whether any one of defendants Fregly, Hodrick, or Yeager are "officers" of the Commonwealth.[2]

"Individuals 'to whom are delegated some of the sovereign functions of government, to be exercised by them for the benefit of the public,' have been considered to be 'officers' for purposes of our jurisdiction. Forney v. Harrisburg State Hospital, 18 Pa. Commonwealth Ct. 17, 21, 336 A. 2d 709, 711 (1975)." Tokar v. Com., 29 Pa. Commonwealth Ct. 383, 386, 371 A. 2d 537, 538 (1977). See also, Richie v. Philadelphia, 225 Pa. 511, 516, 74 Atl. 430 (1909).

Defendants claim that under this standard Henry Fregly, the executive director of the board, qualifies as an "officer."

However, defendants also admit that the definition of "officer" was modified and narrowed by the Commonwealth Court in Opie v. Glascow, Inc., 30 Pa. Commonwealth Ct. 555, 375 A. 2d 396 (1977). In Opie, the court declared that:

"The definitions of 'officer' and 'employee,' for jurisdictional purposes, currently used by this Court were first set out in Forney v. Harrisburg State Hospital, 18 Pa. Commonwealth Ct. 17, 21,

---

2. "Section 401(a)(1) [of the Appellate Court Jurisdiction Act] may properly be construed to give the Commonwealth Court jurisdiction as to all defendants in a case such as this where it is alleged that the Commonwealth or its officers share joint and several liability with others who are not the Commonwealth or its officers." Freach v. Com., 471 Pa. 558, 570-71, 370 A. 2d 1163, 1169 (1977).

336 A. 2d 709, 711 (1975), where 'officers' were described as 'persons to whom are delegated some of the sovereign functions of government, to be exercised by them for the benefit of the public' and 'employees' were described as persons who 'merely exercise subordinate ministerial function.' Having now reconsidered these definitions, we believe that the term 'officers,' for jurisdictional purposes, should encompass only those persons who perform state-wide policymaking functions and who are charged with the responsibility for independent initiation of administrative policy regarding some sovereign function of state government." Opie, supra, 30 Pa. Commonwealth Ct. at 559, 375 A. 2d at 398. See also Fischer v. Kassab, 25 Pa. Commonwealth Ct. 593, 380 A. 2d 926 (1976).

Defendants further admit that since Mr. Fregly performs no state-wide policymaking functions, he would not be an "officer" under this definition. We were, however, urged by these defendants to await a decision by the Supreme Court on this question before making a ruling. A definitive statement of what constitutes an "officer" was expected in the appeal of the Commonwealth Court's decision in Tokar, supra. However, the Supreme Court disposed of Tokar without ruling on this particular issue.[3] See Tokar v. Com., 480 Pa. 598, 391 A. 2d 1046 (1978).

Nevertheless, the Supreme Court has recently adopted the definition of "officer" set forth in Opie, supra, in Kulik v. Stotelmyer, 481 Pa. 57, 391 A. 2d 1313 (1978). The court clearly set forth that "[a]n officer of the Commonwealth for the purposes of

---

3. In Tokar, the Commonwealth was also a named defendant. Therefore, the Commonwealth Court was found to have jurisdiction on the basis of that fact alone: Tokar, supra, at 1048.

section 401 of the Appellate Court Jurisdiction Act is a Commonwealth employee whose duties principally involve the statewide formulation or administration of policy." Kulik, supra, 481 Pa. at 59, 391, A. 2d at 1314-15. It reasoned that: ". . . Such a rule avoids overburdening of the Commonwealth Court with suits concerning the actions of every state employee and allows local courts to dispose of cases concerning officials of basically local jurisdiction." Kulik, supra, 481 Pa. at 60, 391 A. 2d at 1315. Since defendants "do not contend that they qualify as Commonwealth officials under this restrictive definition inasmuch as none exercise statewide policy-making functions," defendants' brief at 7, we see no reason to give this issue any further scrutiny.

Defendants Fregly, Yeager, and Hodrick next assert that this court lacks jurisdiction over them because no case or controversy exists between them and plaintiffs. The core of this contention lies with plaintiffs' naming Does I-X as defendants. Does I-X "are all those individuals either employed by or acting as agents of Northumberland CBA during the month of January, 1978 who had access to any or all files held by the Northumberland CBA, which files contained any information relating to any or all of the Plaintiffs." Plaintiffs' amended complaint, paragraph 6. Defendants argue that no case or controversy exists because "plaintiff freely admits that the actions complained of may well have been committed, not by any defendant, but by these unnamed employees and agents." Defendants' brief at 9.

Though neither party could present us with any citations directly supporting or rejecting this assertion, we did find some relevant case law. In Watters v. Parrish, 402 F. Supp. 696 (W.D. Va. 1975), automobile owners who had parked their automobiles

alongside a state road bordering a national park returned after an overnight camping trip to find that their automobiles had been towed away by private parties at the direction of the state police. They brought a civil rights action against the private parties, two named state policemen, and certain unnamed members of the state police. A motion to dismiss was filed by the two named state police defendants as well as the unknown members of the state police contending that the court lacked jurisdiction and that no actual controversy existed. The court overruled defendants' motion "so to give the plaintiffs an opportunity to conduct discovery and add any additional parties after discovery." Watters, supra, at 701.

While we realize that the pleading practice in Federal courts differs from that in this court, we nevertheless believe the reasoning in Watters is sound and applicable to the present case. Pa.R.C.P. 2229(c) provides for just this type of situation: "Parties may join or be joined in the alternative although the cause of action asserted by or against any one or more of them is inconsistent with the cause of action asserted by or against any of the others so joined." The rationale of this rule is applicable to the present situation. Since defendants can be sued in the alternative with other named defendants, we do not see any prejudice in their being sued in the alternative with unnamed defendants.

Finally defendants Fregly, Yeager, and Hodrick assert that this court lacks power and jurisdiction over defendants Does I-X in that: (a) no service of the complaint has been made upon them, and (b) the complaint fails to plead sufficient facts to establish that an actual controversy exists between them and plaintiffs. Similar objections were raised on behalf of the unnamed members of the state

police in Watters, supra. The court in Watters over-ruled the motion adding that "if additional parties are added, this court will then entertain any motions to dismiss with respect to additional parties that counsel might wish to make." Watters, supra, at 701. We will adopt the same approach in this action.

## II. Demurrer

### A. Right to Privacy Claim

Plaintiffs allege that the disclosure of personal information contained in their files maintained by the board violated their right to privacy under the Ninth Amendment to the United States Constitution.[4] In response defendants contend that the constitutional right to privacy does not encompass the interests alleged here.

"Any claim of a constitutional right of privacy must be founded upon the Supreme Court's pronouncements in Griswold v. Connecticut, 381 U.S. 479 (1965), and Roe v. Wade, 410 U.S. 113 (1973), which recognized that certain 'zones of privacy' are protected by specific guarantees found in the first, fourth, fifth, ninth and fourteenth amendments." Louise B. v. Coluatti, Civil No. 78-635 (E.D. Pa. filed September 28, 1978). The constitutionalization of a right to privacy has been an extremely cautious and deliberate process, occurring only in response to extraordinary circumstances. See Morris v. Danna, 411 F. Supp. 1300, 1304 (Minn. 1976). The right has been held applicable only to

---

4. Plaintiffs have not claimed a violation of the common law right to privacy recognized by state tort law. That right is not to be equated with the constitutional right to privacy: McNally v. Pulitzer Pub. Co., 532 F. 2d 69, 76 (8th Cir. 1976).

"personal rights . . . which are 'fundamental' or 'implicit in the concept of ordered liberty' as described in Palko v. Connecticut, 302 U.S. 319, 325 (1937)." Paul v. Davis, 424 U.S 693, 713, 96 S.Ct. 1155, 47 L.Ed. 2d 405, 421 (1976). Consequently the right has been limited to "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." Paul, supra.

An examination of the case law shows just how narrowly this right has been circumscribed. In Paul v. Davis, supra, plaintiff had been arrested on a charge of shoplifting. This charge was never disposed of. Nevertheless, the police placed his named on a list of "active shoplifters" to be disseminated to local merchants. No violation of plaintiff's right to privacy was found, the Supreme Court concluding that the claim was far afield from those decisions in which such a right was recognized. See Paul, supra, at 713. Also in Baker v. Howard, 419 F. 2d 376 (9th Cir. 1969), no violation of plaintiff's constitutional right to privacy was recognized where defendant police, after examining a "suspicious incident" involving plaintiff and concluding that no crime had been committed, nevertheless deliberately released a report to a radio station containing "false and libelous" statements suggesting that plaintiff had committed a crime.

The two decisions which are most influential in our analysis are Morris v. Danna, supra, and Louise B. v. Coluatti, Civil No. 78-635 (E.D. Pa. filed September 28, 1978). In Morris, plaintiff brought an action against, among others, the manager of the county welfare department fraud unit, the director of the county welfare department, and seven individual members of the county welfare board. A

front page article had appeared in a newspaper which named plaintiff as a male "go-go" dancer and welfare recipient who had been "tripped up" by the county welfare department fraud unit. Plaintiff alleged that the articles contained information which only could have been obtained from confidential files concerning the receipt of public assistance. Plaintiff further alleged that this information was released to the press by defendants who had access to the files. The court concluded that plaintiff had not stated a constitutional claim for invasion of privacy. Morris, supra, at 1305. Plaintiffs in this action attempt to distinguish Morris from the present case by pointing out that plaintiff in Morris was accused of a crime. We do not see this as a viable distinction. Besides containing the fact that plaintiff was "tripped up" by the fraud unit the articles in Morris also disclosed information obtained from plaintiff's medical reports submitted to the county welfare department. If the disclosure of information gleaned from medical reports contained in welfare files does not constitute an invasion of privacy, we do not see how plaintiffs in the present case can establish a cause of action. The articles published by the newspapers merely stated that plaintiffs had made claims for expenses, that these claims had been denied, and that a hearing had been requested and would be held.

Louise B., supra, involved the Pennsylvania Department of Welfare's attempt to ferret out instances of welfare fraud. To accomplish this an investigative program was undertaken whereby the names and identification of all welfare recipients were matched by computer with the names and identification of all Commonwealth employes. The theory behind the program was simply that

those individuals whose names appeared on both lists were people who were employed and although probably not entitled, were nonetheless receiving welfare benefits. Plaintiffs' names appeared on both lists. They asserted that the use and disclosure of their confidential welfare records constituted a violation of their constitutional right to privacy. The court disagreed, finding that none of the recognized "zones of privacy," i.e., "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education," could "fairly be said to encompass plaintiffs' present claim." Louise B., supra, at 11.

We believe these two cases, Louise B. and Morris, are dispositive of the issues involved in defendants' demurrer. A reading of the articles published reveals that plaintiffs had made a claim for certain benefits, that these claims were denied, and that they requested a hearing. We find no intrusion upon any of the "zones of privacy" listed above. Plaintiffs' counsel argues that such cases as Louise B., Morris, and Baker, supra, are not controlling since a crime was alleged in the disclosure made in each. But isn't that the gist of plaintiffs' complaint, i.e., that they were accused of welfare fraud by implication? Plaintiffs also contend that matters relating to Mr. Fritts' health were disclosed. In response it must be noted that the plaintiff in Morris had his medical reports disclosed. Plaintiffs have not stated a constitutionally recognized cause of action for invasion of privacy.

B. Intentional Infliction of Emotional Distress Claim

Plaintiffs also claim damages for intentional infliction of emotional distress. Defendants Fregly,

Hodrick, and Yeager have filed a demurrer contending that the facts alleged do not state a cause of action.

The tort of intentional infliction of emotional distress stems from the Restatement of Torts. Section 46 of the Restatement, 2d, Torts, provides: "(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." The Supreme Court of Pennsylvania, in Forster v. Manchester, 410 Pa. 192, 189 A. 2d 147 (1963), recognized the tort of intentional infliction of emotional distress as stated in section 46 of the revised first Restatement of Torts, and in Papieves v. Kelly, 437 Pa. 373, 263 A. 2d 118 (1970), the court indicated that when presented with the proper case it would adopt the formulation of section 46 of the Restatement, 2d, Torts.

The comments to section 46 provide a guide for elaborating on the elements of this tort. In comment d. it is stated that:

". . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

Until recently we would have had little difficulty in granting defendants' demurrer. Only one case in Pennsylvania had shown facts sufficient to support a claim under section 46. In Papieves v. Kelly,

supra, defendants' withholding the body of plaintiffs' son from them after a defendant had struck the son with an automobile and buried the body without authorization was found to be a sufficient allegation of "extreme and outrageous conduct." All other appellate decisions of this state found that the requisite standard had not been met. See Forster v. Manchester, supra (private investigator's surveillance of plaintiff); Jones v. Nissenbaum, Rudolph & Seidner, 244 Pa. Superior Ct. 377, 368 A. 2d 770 (1976) (actions of creditor and attorney in attempting to collect debt).

However, in Fair v. Negley, 257 Pa. Superior Ct. 50, 390 A. 2d 240 (1978), the Superior Court, by way of a 5-2 decision, made our task a bit more complex. Plaintiffs, tenants in an apartment owned by defendant, alleged that defendant had intentionally inflicted emotional distress upon them through his refusal to make the premises fit for human habitation. The trial court granted defendant's demurrer. On appeal the Superior Court reversed. The court reasoned that "preliminary objections in the nature of a demurrer should be sustained only where it appears with certainty that upon the facts averred the law will not permit the plaintiff to recover." Fair, supra, at 246. It was found that plaintiffs had alleged sufficient facts to overcome a demurrer.

Notwithstanding the Superior Court's opinion in Fair, we believe plaintiffs have not met their burden in this case. To be liable defendants must "*intentionally* cause *severe emotional distress.*" (Emphasis supplied.) "[T]he requisite intention is met when the act is done 'with knowledge on the part of the actor that severe emotional distress is substantially certain to be produced by his con-

duct.'" Forster, supra, 410 Pa. at 199, 189 A. 2d at 151. We do not believe defendants could possibly have been "substantially certain" that releasing confidential information concerning plaintiffs would cause severe emotional distress. Embarrassment and disapproval perhaps, but certainly not severe emotional distress.

The nature of the expected consequences of defendants' disclosure also plays a role in determining whether this conduct was "extreme and outrageous" as required by section 46. In Fair, defendant landlord's refusal to make the premises fit for human habitation affected plaintiffs every minute of their waking existence. At all hours of the day and night plaintiffs were subjected to improper ventilation of a gas hot water heater and gas space heaters, lack of heat, falling plaster, defective electrical wiring, a malfunctioning water system, defective windows, broken porch steps and railings, and a leaking roof. See Fair, supra, at 242. Surely subjecting someone to such intolerable living conditions could be considered "extreme and outrageous conduct." However, all that could be reasonably expected as a result of defendants' disclosure in the present case would be embarrassment, humiliation, worry, or anger. As pointed out in comment j. to section 46:

"Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity."

The conduct alleged of defendants Fregly, Hodrick, and Yeager was certainly not outrageous nor intended to cause severe emotional distress. Therefore, their demurrer will be granted.

Defendants Fregly, Hodrick, and Yeager have also filed a motion to strike and a motion for more specific pleading. In light of our granting their demurrer we see no need to rule on these motions at this time.

## PRELIMINARY OBJECTIONS OF DEFENDANTS DAILY ITEM PUBLISHING COMPANY, NEWS PUBLISHING AND PRINTING COMPANY, AND STANDARD PRINTING COMPANY, INC.

### I. Demurrer

In addition to what was said above with respect to the demurrer of defendants Fregly, Hodrick, and Yeager, we must also note that this action involves the newspapers' First Amendment right of free speech and free press. Such a situation calls for restraint on the part of this court. See Baker v. Howard, 419 F. 2d 376, 377 (9th Cir. 1969).

### II. Motions to Strike

As with the motion to strike filed by the Commonwealth defendants, in light of our granting their demurrer, we will not rule on this at the present time. We therefore, enter the following

### ORDER

And now, October 1, 1979, after due consideration of the written and oral arguments of counsel, it is ordered and directed

1. that defendants Henry Fregly, Pauline Yeager, and Thomas Hodrick's preliminary objec-

tion in the nature of a petition raising the question of jurisdiction be, and the same is hereby, denied;

2. that defendants Fregly, Yeager, and Hodrick's preliminary objection in the nature of a demurrer be, and the same is hereby, sustained;

3. that the preliminary objections of defendants News Publishing and Printing Company, Daily Item Publishing Company, and Standard Printing Company, Inc., in the nature of a demurrer be, and the same are hereby, sustained.

Plaintiffs shall have 20 days from the date of the filing of this order to file an amended complaint.

## ORDER

And now, December 7, 1979, this court having reviewed the decision of the United States Court of Appeals for the Third Circuit in Louise B. v. Coluatti, No. 78-2468 (3d Cir. filed September 28, 1979), and having concluded that it does not necessitate any change in our order of October 1, 1979, it is ordered and directed that plaintiffs' motion for reconsideration be, and the same is hereby, denied. Plaintiff shall have 20 days from the date of the filing of this order to file an amended complaint.