[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 27, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-14189

_____

D. C. Docket No. 00-00517-CV-3-RV-MD

STEVEN K. DUNLAP and STEVEN K. DUNLAP,
d.b.a. STEVEN DUNLAP CONSULTING FIRM,

Plaintiffs-Appellants,
Cross-Appellees,

versus

G&L HOLDING GROUP INCORPORATED,
d.b.a. G&L Bank, G&L BANK,
G. KAY GRIFFITH,
KEITH COTHAM,

Defendants-Appellees,
Cross-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

(August 27, 2004)

Before BIRCH, MARCUS and BRUNETTI[*], Circuit Judges.

BIRCH, Circuit Judge:

The outcome of this appeal hinges on complicated issues of federal subject matter jurisdiction, one of which is an issue of first impression in this circuit: whether a state-law claim alleging conversion of an idea is completely preempted by § 301 of the Copyright Act, 17 U.S.C. § 101 et seq.  The district court held that it had subject matter jurisdiction over two related (and later consolidated) cases brought by plaintiff-appellant-cross-appellee, Steven K. Dunlap, d/b/a Steven Dunlap Consulting Firm, Inc. (collectively, "Dunlap") against the defendants-appellees-cross-appellants, G&L Holding Group, Inc. ("GLHG"), G&L Bank, G. Kay Griffith, and Keith Cotham (collectively, "GLHG").  After finding jurisdiction, the district court granted summary judgment in favor of GLHG.  We hold that the district court improperly exercised subject matter jurisdiction over both cases, and, as a result, we **REVERSE** the judgment of the district court and **REMAND** with instructions to remand both cases back to their state court of origin.

---

[*]Honorable Melvin Brunetti, United States Circuit Judge for the Ninth Circuit, sitting by designation, participated in the oral argument of this case.  Judge Brunetti, however, did not participate in the disposition of this case, which we decide by quorum.  28 U.S.C. § 46(d).

# I. BACKGROUND

A. Brief Factual Background[1]

This appeal arises out of Dunlap's idea to create an Internet-based bank that would cater to the gay and lesbian community. During the mid- and late-1990s, Dunlap researched and explored the potential for such a bank, which eventually became G&L Bank, a federally chartered financial institution. As part of this process, Dunlap conceived, designed, and created the name and logo of G&L Bank and registered the trademark and design with the United States Patent and Trademark Office. Dunlap also "codified" his bank idea and business plan (which he termed the "Bank Concept"), R13-531, SDK II Depo. at Ex. 3, 10, and eventually circulated the materials to potential investors and interested parties, including his acquaintance Keith Cotham. Cotham liked Dunlap's idea and was invited by Dunlap to become the co-founder of G&L Bank.

Dunlap and Cotham continued to submit the G&L Bank business plan to potential investors and also sought professional advice on how to raise sufficient capital for their project. Based on this advice, Dunlap and Cotham consulted G. Kay Griffith, an experienced bank operating officer, and offered her the position of

---

[1]A detailed discussion of the intricate facts involved in this case is unnecessary because the outcome of this appeal depends upon whether the district court properly exercised federal subject matter jurisdiction.

President of G&L Bank. After Cotham and Griffith were on board, Dunlap executed a written contract with G&L Bank to serve as its Business Development and Marketing Director. Before his employment term was to end, however, Dunlap was terminated from his position. Dunlap's claims in this appeal are based on the alleged breach of this employment agreement and the ownership and use of the G&L Bank trademark.

B. Procedural Background

Dunlap filed two lawsuits in the Circuit Court for Escambia County, Florida, each based on the basic facts described above. First, Dunlap filed an action against GLHG and G&L Bank (collectively, "Dunlap I defendants") alleging breach of his employment agreement and various claims related to the ownership and right to use the G&L Bank trademark ("Dunlap I").[2] The Dunlap I defendants removed the case to the Northern District of Florida, arguing that two substantial questions of federal law existed: (1) whether Dunlap's employment agreement satisfied the requirements of 12 C.F.R. § 563.39, which governs employment agreements with federally chartered financial institutions such as G&L Bank, and (2) whether Dunlap's federally registered trademark was valid under 15 U.S.C. §§ 1051, 1055.

_____

[2]Dunlap alleged seven claims: breach of employment contract (Count I), breach of trademark agreement (Count II), fraudulent misrepresentation (Count III), rescission (Count IV), conversion (Count V), civil theft (Count VI), and a final claim for injunctive relief (Count VII). See generally R1-14.

4

The district court agreed and exercised federal subject matter jurisdiction on both grounds raised by the Dunlap I defendants and then granted partial summary judgment in their favor.[3]  R2-40, R6-237.

In his second suit, Dunlap brought claims against GLHG, G&L Bank, Cotham, and Griffith (collectively, "Dunlap II defendants"), alleging, essentially, that they stole his Bank idea by continuing to operate the Bank after he was terminated and that they fraudulently induced him to give up his rights in the G&L Bank trademark and then continued to use the mark after his termination ("Dunlap II").[4]  As in Dunlap I, the Dunlap II defendants removed the case to the Northern District of Florida, again arguing that the claims involving the G&L Bank trademark raised substantial questions of federal law.  The district court agreed and again granted partial summary judgment in favor of the Dunlap II defendants.[5]  R6-215, R16-584.  In addition to finding subject matter jurisdiction based on federal

---

[3]The district court exercised supplemental jurisdiction over Count VII for injunctive relief.  R2-40 at 8.

[4]The complaint alleged the following five claims: Misappropriation of Trade Secrets under Florida's Uniform Trade Secrets Act (Count I), Conversion (Count II), Unfair and Deceptive Trade Practices under Florida's Deceptive and Unfair Trade Practices Act (Count III), Fraud (Count IV), and Civil Conspiracy (Count V).  See generally R7-273.

[5]The district court exercised supplemental jurisdiction over Counts I, II, IV, and V.  R16-215 at 8-9.

trademark law, the district court also noted that Dunlap's conversion claim was preempted by the Copyright Act.[6]  R16-584 at 39.

## II.  DISCUSSION

On appeal, Dunlap argues that the district court improperly exercised subject matter jurisdiction over both Dunlap I and Dunlap II.[7]  We agree.  Subject matter jurisdiction is a legal question that we review de novo.  Fogade v. ENB Revocable Trust, 263 F.3d 1274, 1285 (11th Cir. 2001) (citation omitted).

In this section, we begin with a discussion of federal question jurisdiction and then proceed to a more specific discussion of why the district court improperly found federal question jurisdiction in both Dunlap I and Dunlap II.

A.  Federal Question Jurisdiction

Any claim that was originally filed in state court may be removed by a defendant to federal court if the case could have been filed in federal court originally.  28 U.S.C. § 1441(a).  Where, as here, there is not complete diversity of

---

[6]The district court clearly meant that Dunlap's claim was completely preempted, even though the court's order says only that the conversion claim "is preempted by the Copyright Act."  R16-584 at 39.  Although the district court initially did not rely on this ground as the basis for subject matter jurisdiction, GLHG now argues that complete preemption is an alternative ground for properly exercising subject matter jurisdiction over Dunlap II.

[7]GLHG, in a cross-appeal, alleges that the district court erred by finding, in its Dunlap II summary judgment order, that Dunlap owned the G&L Bank trademark at issue.  Because we conclude that the district court improperly exercised subject matter jurisdiction over Dunlap II, we need not address the merits of this cross-appeal.

citizenship, the defendant must show that federal question jurisdiction is present. Id. § 1441(b). Federal courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331.

Whether a claim "arises under" federal law "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429 (1987). Thus, "the plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law," even where a federal claim is also available. Id. However, even when a plaintiff has pled only state-law causes of action, he may not avoid federal jurisdiction if either (1) his state-law claims raise substantial questions of federal law or (2) federal law completely preempts his state-law claims. See Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 13, 103 S. Ct. 2841, 2848 (1983).

In order for a state-law claim to raise substantial questions of federal law, "[federal] law must be an essential element of [Dunlap's] claim[, and] the federal right or immunity that forms the basis of the claim must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it

7

is given another." Mobil Oil Corp. v. Coastal Petroleum Co., 671 F.2d 419, 422

(11th Cir. 1982). "[T]he mere presence of a federal issue in a state cause of action

does not automatically confer federal-question jurisdiction." Merrell Dow

Pharms., Inc. v. Thompson, 478 U.S. 804, 813, 106 S. Ct. 3229, 3234 (1986). In

other words, the state-law claim must "really and substantially involve[ ] a dispute

or controversy respecting the validity, construction or effect of [federal] law."

Mobil Oil, 671 F.2d at 422.

Complete preemption occurs when federal law so occupies a given field that

a state-law claim is transformed into a claim "arising under" federal law.[8] Geddes

v. Am. Airlines, Inc., 321 F.3d 1349, 1353 (11th Cir. 2003), cert. denied, __ U.S.

---

[8]So-called "ordinary preemption," which is raised as a defense based on the preemptive effect of a federal statute, will not provide a basis for removal. Complete preemption and ordinary preemption are not synonymous:

> Preemption is the power of federal law to displace state law substantively. The federal preemptive power may be complete, providing a basis for jurisdiction in the federal courts, or it may be what has been called "ordinary preemption," providing a substantive defense to a state law action on the basis of federal law.
>
> More specifically, ordinary preemption may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint. Such a defense asserts that the state claims have been substantively displaced by federal law. . . .
>
> Complete preemption, on the other hand, is a doctrine distinct from ordinary preemption. Rather than constituting a defense, it is a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims. It looks beyond the complaint to determine if the suit is, in reality, purely a creature of federal law, even if state law would provide a cause of action in the absence of the federal law, . . . thus creating the federal question jurisdiction requisite to removal to federal courts.

Geddes v. Am. Airlines, Inc., 321 F.3d 1349, 1352-53 (11th Cir. 2003) (internal punctuation and citations omitted), cert. denied, __ U.S. __, 124 S. Ct. 386 (2003).

8

\_\_, 124 S. Ct. 386 (2003). In other words, "if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." Franchise Tax Bd., 463 U.S. at 24, 103 S. Ct. at 2854.

The Supreme Court has admonished that federal law should be found to completely preempt state law "only in statutes with 'extraordinary' preemptive force." Geddes, 321 F.3d at 1353. To date, the Supreme Court has identified only three statutes that completely preempt related state-law claims: (1) § 301 of the Labor Management Relations Act, 29 U.S.C. § 185; (2) § 1132 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.; and (3) §§ 85 and 86 of the National Bank Act, 12 U.S.C. § 21 et seq. See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 7-11, 123 S. Ct. 2058, 2062-64 (2003). The Court found that complete preemption applied to those statutes because all three "provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." Id. at 8, 123 S. Ct. at 2063. Accordingly, the "touchstone" of federal question jurisdiction based on complete preemption is congressional intent. Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc., 182 F.3d 851, 857 (11th Cir. 1999) (quoting Met. Life Ins. Co. v. Taylor, 481 U.S. 58, 66, 107 S. Ct. 1542, 1548 (1987)).

9

In this case, because Dunlap alleged only state-law causes of action in both Dunlap I and Dunlap II, the district court had to find that Dunlap's claims either raised a substantial federal question or were completely preempted by federal law. We discuss Dunlap I and Dunlap II—and the reasons why the district court improperly exercised subject matter jurisdiction—in turn.

## B. *Dunlap I*

In Dunlap I, the district court found that Dunlap's claims raised substantial questions of federal law based on its conclusion that the validity of Dunlap's claims hinged on (1) whether his employment contract complied with federal banking regulations and (2) whether he owned the disputed G&L Bank trademark in accordance with federal trademark law. We discuss each jurisdictional ground below.

### 1. Federal Banking Regulations

The federal banking regulation at issue provides: "All employment contracts [with federally chartered institutions] shall be in writing and shall be approved specifically by an association's board of directors." 12 C.F.R. § 563.39(a) (2003). The district court and the Dunlap I defendants characterize proof of compliance with this regulation as a federal question substantially necessary to

10

prove the existence of a valid employment contract.[9]  Dunlap, on the other hand,

asserts that this federal question is insufficiently substantial to confer removal

jurisdiction.  We agree with Dunlap.

The fact that a court must apply federal law to a plaintiff's claims or construe

federal law to determine whether the plaintiff is entitled to relief will not confer

federal subject matter jurisdiction—the implicated federal issue must be

*substantial*.  Franchise Tax Bd., 463 U.S. at 13, 103 S. Ct. at 2848.  For example, it

is now well established that federal jurisdiction is not created by the mere fact that

proof of violation of a federal statute is an element of a plaintiff's state-law cause

of action.  See Merrell Dow, 478 U.S. at 814, 106 S. Ct. at 3235 (holding that a

federal question was not raised by the mere fact that proof of violation of the

federal Food, Drug and Cosmetic Act was a necessary element of the plaintiff's

state-law tort claim); Jairath v. Dyer, 154 F.3d 1280, 1283 (11th Cir. 1998)

(concluding that removal jurisdiction was improperly exercised because proof of

---

[9]Jurisdiction based on complete preemption is, of course, inapplicable here.  Proof of compliance with § 563.39 is not an essential element of Dunlap's breach of contract claim. Instead, noncompliance with 12 C.F.R. § 563.39 would be raised as a defense to the existence of a valid contract under state law—if the contract at issue did not meet the requirements of § 563.39, a finding under state law that a valid contract existed would be preempted.  See Aronson v. Resolution Trust Corp., 38 F.3d 1110, 1112-13 (9th Cir. 1994) (examining § 563.39 requirements as related to ordinary preemption defense).  Moreover, this federal banking regulation does not provide the exclusive cause of action for Dunlap's breach of contract claim and does not set forth procedures or remedies governing a breach of contract claim.  See Beneficial Nat'l Bank, 539 U.S. at 8, 123 S. Ct. at 2063.

11

violation of the Americans with Disabilities Act, although a necessary element of the plaintiff's state-law discrimination claim, was an insufficiently substantial federal question); see also City of Huntsville v. City of Madison, 24 F.3d 169, 174 (11th Cir. 1994) (reasoning that interpretation of the Tennessee Valley Authority Act as a necessary element of the plaintiffs' state-law cause of action was not enough to permit federal question jurisdiction).[10]

Here, Dunlap's claims do not require proof of violation or an interpretation of federal law. Indeed, the only potential issue involving federal law is whether Dunlap's employment contract complied with the terms of 12 C.F.R. § 563.39. This issue would be raised only as a defense after Dunlap had successfully established the existence of a valid contract under state law—far removed from a situation where compliance with a federal law is an essential element of the plaintiff's claims (in itself insufficient), much less one where "the claim will be supported if the federal law is given one construction or effect and defeated if it is given another." See Mobil Oil, 671 F.2d 422. Accordingly, the district court erred in exercising subject matter jurisdiction on this ground.

---

[10]Ayres v. Gen. Motors Corp., 234 F.3d 514, 519 (11th Cir. 2000) provides an example of when removal jurisdiction was proper based on the existence of a substantial, disputed question of federal law. In that case, the plaintiffs' state-law RICO claims required a determination of the interaction between two federal statutes: whether violation of the federal Safety Act constituted a violation of the federal mail and wire fraud statutes. Id. Because resolution of this question was a necessary element of the plaintiffs' state-law claims, removal jurisdiction was proper. Id. Dunlap's claims, in contrast, do not raise questions involving the interplay between federal laws.

## 2. Federal Trademark Law

Dunlap alleges that the Dunlap I defendants breached an agreement to purchase the G&L Bank trademark from him and that they fraudulently induced him to sign away his rights in the mark for no consideration. The district court concluded that federal subject matter jurisdiction was present because Dunlap's claims raised "essential federal questions concerning the parties' respective rights in a federally registered trademark."[11] R2-40 at 7. We disagree.

Specifically, the district court found three federal questions presented by Dunlap's claims regarding the G&L Bank trademark:

> First, the determination of the plaintiff's rights in the trademark will require the application and interpretation of federal law concerning the use of the mark in commerce. Second, the validity of the transfer of the trademark will require consideration of the statutory requirements for the assignment of such a mark. Third, the plaintiff's claim for conversion may, in reality, amount to a claim for trademark infringement because the defendants' assumption of ownership of the trademark will be demonstrated either by the defendants' use of the trademark in commerce without the consent of the registrant contrary to federal law, or by the defendant's registration of the trademark with the United States Patent and Trademark Office.

---

[11]GLHG incorrectly asserts that Dunlap's claims regarding the G&L Bank trademark are also completely preempted by the Lanham Act, 15 U.S.C. § 1051. State and federal courts are expressly given concurrent jurisdiction over claims involving infringement of a federally registered trademark. 28 U.S.C. § 1338(a). Thus, in order to find subject matter jurisdiction over these claims, the district court had to find a *substantial* federal question imbedded in Dunlap's cause of action.

13

Id. (internal citations omitted). As noted in the previous section, however, the need to apply, interpret, or consider federal law to determine whether the plaintiff is entitled to relief is not sufficient to confer federal subject matter jurisdiction—the implicated federal issue must be *substantial*. Franchise Tax Bd., 463 U.S. at 13, 103 S. Ct. at 2848; Merrell Dow, 478 U.S. at 814, 106 S. Ct. at 3235; Jairath, 154 F.3d at 1283; City of Huntsville, 24 F.3d at 174.

The Dunlap I defendants maintain that Dunlap must prove that he owned the trademark in accordance with federal trademark law to succeed on his state-law claims involving the G&L Bank trademark. 15 U.S.C. § 1051. The Dunlap I defendants assert that this ownership determination is a sufficiently substantial federal question to confer subject matter jurisdiction.[12] However, while Dunlap may have to prove ownership of the G&L Bank trademark in accordance with federal law (and we need not decide that issue in this appeal), such a determination would not raise disputed questions of federal law sufficient to confer removal jurisdiction.

C. *Dunlap II*

In Dunlap II, Dunlap alleged, essentially, that the Dunlap II defendants misappropriated, converted, and stole his "Bank Concept"—the idea for an Internet

---

[12]This argument was also raised in Dunlap II and is raised in this appeal.

bank catering to the gay and lesbian community. R7-273 at 12-21. The district court exercised federal question jurisdiction because Dunlap again alleged claims related to the G&L Bank trademark. For the reasons stated in our discussion of Dunlap I, subject matter jurisdiction was improper as to these claims.

In addition, the district court found that Dunlap's claim for conversion of his idea for the Bank was completely preempted by § 301 of the Copyright Act. We now turn to this alternative jurisdictional ground, which raises a question of first impression in this circuit: whether a state-law claim for conversion of an idea, the expression of which merges with the idea, is completely preempted by the Copyright Act, thereby vesting the trial court with federal removal jurisdiction.

Section 301(a) of the Copyright Act dictates that the following state-law claims are preempted:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in *works of authorship that are fixed in a tangible medium of expression* **and** *come within the subject matter of copyright as specified by sections 102 and 103*.

17 U.S.C. § 301(a) (emphasis added). We have held that this language sets up a two-part test for determining when a state-law claim is preempted: first, "[w]e must decide whether the rights at issue fall within the 'subject matter of copyright' set forth in sections 102 and 103"; and second, we must determine "whether the

rights at issue are 'equivalent to' the exclusive rights of section 106." Crow v.

Wainwright, 720 F.2d 1224, 1225-26 (11th Cir. 1983). The central question

presented in this appeal therefore involves the interplay between §§ 102(a) and

301: does an idea, which is not entitled to copyright protection, nevertheless fall

within the subject matter of copyright, such that a claim for conversion of that idea

would (if the second prong were satisfied) be preempted by the Copyright Act?

The district court—with a cite to one Florida case[13]—answered in the affirmative.

R16-584 at 39. We must disagree, based on a plain reading of the Copyright Act,

its legislative history, and consideration of relevant circuit court cases.[14] See Blab

T.V., 182 F.3d at 857 (noting that congressional intent is the "touchstone" of

complete preemption analysis).

1. The Copyright Act

Section 102(a) defines the "Subject matter of copyright" to include, for

example, literary works, musical works, and sound recordings.[15] 17 U.S.C. §

---

[13]Garrido v. Burger King Corp., 558 So.2d 79, 81-82 (Fla. Dist. Ct. App. 1990) (holding that a state-law claim for conversion of an idea is preempted by the Copyright Act even though the ideas themselves are not subject to copyright protection.)

[14]Accordingly, we need not analyze the second prong: whether Dunlap's claim for conversion is equivalent to a claim for copyright infringement.

[15]Protected works of authorship include the following:
(1) literary works;
(2) musical works, including any accompanying words;
(3) dramatic works, including any accompanying music;
(4) pantomimes and choreographic works;

102(a). Section 102(b), in contrast, contains a "negative definition" of the subject matter of copyright by listing elements that do not fall within its penumbra, including ideas: "In no case does copyright protection for an original work of authorship extend to any idea . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work."[16] Id. § 102(b); see also Celine Michaud & Gregory Tulquois, Idea Men Should be Able to Enforce Their Contractual Rights, 6 Vand. J. Ent. L. & Prac. 75, 81 (2003); Paul Goldstein, Preempted State Doctrines, Involuntary Transfers and Compulsory Licenses: Testing the Limits of Copyright, 24 U.C.L.A. L. Rev. 1107, 1119 (1977). Therefore, "the Copyright Act does not extend protection to ideas as distinguished from their expression." Nimmer on Copyright, § 1.01[B][2][c] at 1-58 (2004).

The language and structure of the Copyright Act contains an important distinction that is critical to our analysis of whether an idea can be said to fall

---

(5) pictoral, graphic, and sculptural works;
(6) motion pictures and other audiovisual works;
(7) sound recordings; and
(8) architectural works.

17 U.S.C. § 102(a). Section 103 dictates that copyright protection of the works specified in § 102(a) extends to compilations and derivative works contributed by the author. Id. § 103(a), (b).

[16]The full text of § 102(b) states:
In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.
17 U.S.C. § 102(b).

17

within the subject matter of copyright. Substantively, § 102(a) lists examples of tangible works that, if certain constitutional requirements are satisfied, would qualify for protection under the Act. Warren Publ'g, Inc. v. Microdos Data Corp., 115 F.3d 1509, 1515 (11th Cir. 1997) (en banc). Relevant requirements include, for example, sufficient originality. Id. Section 102(b), on the other hand, lists examples of elements that are substantively excluded from the Act's protection—including ideas—regardless of whether all constitutional requirements are satisfied. An idea, therefore, does not substantively qualify for protection under the Copyright Act, no matter how "original" it may be.

More significantly in this case, "[u]nder the merger doctrine, 'expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself.'" Bellsouth Adver. & Publ'g Corp. v. Donnelly Info. Publ'g, Inc., 999 F.2d 1436, 1442 (11th Cir. 1993) (en banc) (quoting Kregos v. Associated Press, 937 F.2d 700, 705 (2d Cir. 1991)). Recall that the idea in this case is simply that a bank should cater to gay and lesbian customers. Manifestly, given its simplicity, there are but a very vew ways to express that one idea and they all merge with the idea. The conversion alleged was not how to implement the

18

idea, but solely the idea itself. This idea is akin to the classic merger doctrine application to an algorithm.

The problem here is that the district court conflated the concept of a "work" with that of an "idea." Where a work of original authorship embraces more than simply the idea, preemption would be appropriate. But where, as here, there is no work that is claimed to have been pirated—*only* an idea which lends itself to very few expressions—there is merger and no preemption.

Accordingly, based on the critical distinction between elements substantively *excluded* from copyright protection and those substantively *capable* of receiving protection, and given that we have previously characterized the statutory substantive exclusions of § 102(b) as "limiting principle[s]," we conclude that the subject matter of copyright, in terms of preemption, includes only those elements that are substantively qualified for copyright protection. Warren Publ'g, 115 F.3d at 1514. Therefore, because ideas are substantively excluded from the protection of the Copyright Act, they do not fall within the subject matter of copyright[17]: "[t]he assertion that an element which is not protected by copyright is

_____

[17]See also Lattie v. Murdach, 42 U.S.P.Q.2d 1240, 1243 (N.D. Cal. 1997) ("[I]deas do not come under the subject matter of copyright, and claims based upon them are not preempted by federal copyright law."); Canter v. West Publ'g Co., No. C 96-20440, 1999 WL 11701, at *6 (N.D. Cal. Jan. 6, 1999) ("The 'work at issue' is not the specific expression in the [tangible] materials, but rather the underlying concepts, processes and procedures that are described in the [tangible] materials. Since the work at issue is not the specific expression of the Plaintiffs' idea, it does not fall within the scope of copyright.") (withdrawn from publication).

19

included in the subject matter of copyright is completely illogical." Michaud &

Tulquois, Idea Men, 6 Vand. J. Ent. L. & Prac. at 81.[18]

### 2. Legislative History of the Copyright Act

The legislative history of the Copyright Act further bolsters our conclusion.

The House Report regarding the broad preemption of state law states that

> [t]he intention of section 301 is to preempt and abolish any rights
> under the common law or statutes of a State that are equivalent to
> copyright and that extend to works coming within the scope of the
> Federal copyright law. . . .
>     *As long as a work fits within one of the general subject matter*
> *categories of sections 102 and 103*, the bill prevents the States from
> protecting it *even if it fails to achieve Federal statutory copyright*
> *because it is too minimal or lacking in originality to qualify*, or
> because it has fallen into the public domain.

H. R. Rep. No. 94-1476, at 130-31 (1976), reprinted in 1976 U.S.C.C.A.N. 5659,

5746-47 (emphasis added).  The emphasized language makes clear that the

preemptive effect of the Copyright Act extends only to those elements

substantively capable of receiving federal copyright protection, regardless of

whether all constitutional requirements, such as originality, are satisfied.  Thus, in

---

[18]But see Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 455 (6th Cir. 2001) (summarily agreeing with Fourth Circuit that ideas fixed in tangible medium of expression are within the subject matter of copyright and, therefore, plaintiff's claim for conversion of those ideas is preempted by Copyright Act), cert. denied, 534 U.S. 1114, 122 S. Ct. 921 (2002); United States ex. rel. Berge v. Bd. of Trs. of the Univ. of Ala., 104 F.3d 1453, 1463 (4th Cir. 1997) (concluding—with no analysis and no legal support—that ideas contained in a tangible medium of expression are within the subject matter of copyright because "the shadow actually cast by the Act's preemption is notably broader than the wing of its protection.").

20

order for a state-law claim to be preempted, it is necessary that the claim involve a work that is substantively eligible for copyright protection.[19] An idea is substantively excluded from the *protection* of copyright—"[c]opyright may be claimed only in the 'expression' of a work of authorship, and not in its 'idea.'" Nimmer on Copyright, § 2.03[D] at 2-36.2. Accordingly, ideas are substantively and categorically excluded from *the subject matter* of copyright.

### 3. Decisions by Other Circuit Courts

GLHG points us to the Sixth Circuit's decision in Murray Hill Publ'ns, Inc. v. ABC Communications, Inc., 264 F.3d 622, 635-36 (6th Cir. 2001), as support for its assertion that Dunlap's claim for conversion of his idea is preempted by the Copyright Act. Murray Hill, however, does not support GLHG's assertion and, in fact, supports the distinction we have articulated here.[20]

---

[19]See H. R. Rep. No. 94-1476, at 57 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5670 ("Section 102(b) in no way enlarges or contracts the scope of copyright protection under the present law. Its purpose is to restate, in the context of the new single Federal system of copyright, that the basic dichotomy between expression and idea remains unchanged."); see also Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 848 (2d Cir. 1997) ("The subject matter requirement is met when the work of authorship being copied or misappropriated 'falls within the ambit of copyright protection.'") (citation omitted).

[20]See also United States ex. rel. Berge v. Bd. of Trs. of the Univ. of Ala., 104 F.3d 1453, 1463 (4th Cir. 1997) (noting that the Copyright Act preempts more than it protects, as we reason here); Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 846 (2d Cir. 1997) (stating that "basketball games do not fall within the subject matter of federal copyright protection" because they are not listed in § 102(a), and while "[that] list is concededly non-exclusive, such events are neither similar nor analogous to any of the listed categories"); ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1453 (7th Cir. 1996) (reasoning that enforcement of shrinkwrap licenses under state law was preempted by the Copyright Act because the data contained in a copyrighted computer

In Murray Hill, the plaintiffs (companies owned by composer and producer Bobby Laurel) alleged conversion of their ideas and concepts—a theme song, a tag line ("This is J.P. on JR in the A.M."), and certain artwork. 264 F.3d at 627, 629. Laurel composed a theme song and a tag line for a radio-DJ friend of his, which was used by the radio station-defendant for nearly five years until the DJ's unexpected death. After the DJ's death, the radio station aired a "tribute" show that included the familiar theme song. Id. at 628. The tribute show was so popular that the radio station converted it into a 90-minute commercial-free recording for public distribution. Laurel did not give his permission for the theme song to be included in the tribute recording and was not credited with authorship of the song on the recording's packaging. Id.

Before the DJ's death, the radio station also allegedly engaged in an ad campaign using the tag line without Laurel's permission. In addition, Laurel alleged that the radio station used artwork on promotional billboards that was copied from a "souvenir program" distributed at the premier of a movie he produced. Id. at 629.

---

program falls within the subject matter of copyright because the *computer program* is substantively eligible for copyright protection, even though data cannot itself be copyrighted).

Laurel sued the radio station and its corporate owner in federal district court, alleging violations of the Copyright Act and certain state-law claims, including conversion. The Sixth Circuit noted that "any case of federal preemption of state law is highly dependent upon the facts presented and the claims actually pled by the parties." Id. at 636. With this caution in mind, the court reasoned that the theme song was a work that fell within the subject matter of copyright as a "musical work" under 17 U.S.C. § 102(a). In addition, the Sixth Circuit held that the tag line and the artwork, though not amenable to copyright protection for lack of originality, nevertheless fell within the subject matter of copyright because "the scope of the Copyright Act's subject matter extends beyond the tangible expressions that can be protected under the Act to elements of expression which themselves cannot be protected." Id. (citation omitted). The Sixth Circuit held that Laurel's conversion claims were preempted by the Copyright Act because, "although the [tag line] and the [a]rtwork lack the level of creativity necessary to come within the protection of the Act, each of them is the expression of an idea, which is the essence of the subject matter of the Act." Id.

The reasoning of the Murray Hill court supports the distinction we make above with regard to substantive threshold eligibility. Laurel's tag line, theme song, and artwork were all substantively eligible for copyright protection—even

23

though the tag line and artwork ultimately failed to receive protection. Thus, the tag line, the theme song, and the artwork were all within the subject matter of copyright, and the Sixth Circuit correctly held that Laurel's claims for conversion of these works were preempted by the Copyright Act. Id. at 637.

In this case, however, we are dealing with a substantive ineligibilty, rather than failure of the constitutional requirements of eligibility. See, e.g., Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345, 111 S. Ct. 1282, 1287 (1994) ("The sine qua non of copyright is originality."). Ideas are substantively ineligible for copyright protection and, therefore, are categorically excluded from the subject matter of copyright. Thus, we conclude that a plaintiff's claim for conversion of his ideas—even original ideas expressed in a tangible medium—is not preempted by the Copyright Act. See 17 U.S.C. § 102(b) (ideas are manifestly ineligible for copyright protection "regardless of the form in which [the idea] is described, explained, illustrated, or embodied").

### III. CONCLUSION

We conclude that the district court improperly exercised subject matter jurisdiction over state-law claims that neither raised a substantial federal question nor were completely preempted by federal law. Application or interpretation of federal banking regulations or federal trademark law does not raise a federal

24

question substantial enough to confer removal jurisdiction. Additionally, we find that Dunlap's claim for conversion of his idea is not preempted by the Copyright Act.

We **REVERSE** the judgment of the district court granting summary judgment in favor of the Appellees and **REMAND** with instructions to remand both Dunlap I and Dunlap II to their state court of origin.